UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| TRUSTEES OF EMPIRE STATE CARPENTERS ANNUITY, APPRENTICESHIP, LABOR-MANAGEMENT COOPERATION, PENSION and WELFARE FUNDS,<br><br>Plaintiffs,<br><br>-against-<br><br>CLAUDE RODRIGUE d/b/a MR DRYWALL, INC., C.R. DRYWALL CO., INC. and C.R. DRYWALL RESIDENTIAL, INC.,<br><br>Defendants. | 13 CV 5760 (JS) (WDW) |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO CONFIRM
AN ARBITRATION AWARD AND FOR SUMMARY JUDGMENT
<u>AGAINST CLAUDE RODRIGUE d/b/a MR DRYWALL, INC.</u>**

Todd Dickerson
Virginia & Ambinder, LLP
40 Broad St., 7th Floor
New York, New York 10004
Tel.: (212) 943-9080
*Attorneys for Plaintiffs*

# **TABLE OF CONTENTS**

                                                              **Page**

**PRELIMINARY STATEMENT** ................................................................................ 1

**STATEMENT OF MATERIAL FACTS** .................................................................. 1

**ARGUMENT** ............................................................................................................. 4

    **I. LEGAL STANDARD** ..................................................................................... 4

        **A. LEGAL STANDARD ON A MOTION TO CONFIRM AN ARBITRATION AWARD** ................................................................ 4

        **B. LEGAL STANDARD ON A MOTION FOR SUMMARY JUDGMENT** ............................................................................................ 5

    **II. THE COURT SHOULD CONFIRM THE AWARD** .................................. 5

    **III. THE COURT SHOULD FIND THAT THERE IS NO GENUINE ISSUE OF MATERIAL FACT THAT RODRIGUE IS LIABLE FOR ANY JUDGMENT ISSUED AGAINST MR DRYWALL** ........................................................... 7

    **IV. THE FUNDS ARE ENTITLED TO ATTORNEYS' FEES AND COSTS** ......... 9

        **A. THE FUNDS ARE ENTITLED TO ATTORNEYS' FEES AND COSTS UNDER THE COLLECTION POLICY** .......................................... 9

        **B. THE FUNDS ARE ENTITLED TO ATTORNEYS' FEES AND COSTS DUE TO MR DRYWALL'S FAILURE TO ABIDE BY THE AWARD** ...... 11

**CONCLUSION** ........................................................................................................ 13

# TABLE OF AUTHORITIES

### Cases

Page

*Federal Cases*

*Abondolo v. Jerry WWHS Co.*,
829 F. Supp. 2d 120 (E.D.N.Y. 2011) .................................................................................. 11

*Abram Landau Real Estate v. Bevona*,
123 F.3d 69 (2d Cir. 1997) .................................................................................................... 4

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ............................................................................................................... 5

*Bell Prod. Engineers Ass'n v. Bell Helicopter Textron*,
688 F.2d 997 (5th Cir. 1982) .............................................................................................. 12

*Cooper v. Gottlieb*,
2000 U.S. Dist. LEXIS 129636 (S.D.N.Y. Sept. 4, 2000) ....................................................... 8

*Dist. Council No. 9 v. All Phase Mirror & Glass*,
2006 U.S. Dist. LEXIS 34836 (S.D.N.Y. May 26, 2006) ................................................. 11-12

*D.H. Blair & Co., Inc. v. Gottdiener*,
462 F.3d 95 (2d Cir. 2006) .................................................................................................... 4

*Finkel v. Red Hook Sign & Elec. Corp.*,
2013 U.S. Dist. LEXIS 115669 (E.D.N.Y. July 3, 2013) ..................................................... 10

*Fleischmann Distilling Corp. v. Maier Brewing Co.*,
386 U.S. 714 (1967) ............................................................................................................. 10

*Florasynth, Inc. v. Pickholz*,
750 F.2d 171 (2d Cir. 1984) ............................................................................................... 4-5

*Gesualdi v. General Concrete, Inc.*,
2013 U.S. Dist. LEXIS 42385 (E.D.N.Y. Feb. 1, 2013) ....................................................... 10

*Jeffreys v. City of New York*,
426 F.3d 549 (2d Cir. 2005) .................................................................................................. 5

*Leed Architectural Products, Inc. v. United Steelworkers of Am. Local 6674*,
916 F.2d 63 (2d Cir. 1990) .................................................................................................... 4

*Local 1199, Drug, Hosp. & Health Care Emples. Union, RWDSU, AFL-CIO v. Brooks Drug Co.*,
956 F.2d 22 (2d Cir. 1992)..................................................................................................... 4

*Mayes v. Local 106, Int'l Union of Operating Eng'rs*,
1995 U.S. Dist. LEXIS 1669 (N.D.N.Y. Jan. 20, 1995).......................................................... 10

*McGuire v. Russell Miller, Inc.*,
1 F.3d 1306 (2d Cir. 1993)..................................................................................................... 10

*N.Y. City Dist. Council of Carpenters Pension Fund v. Angel Constr. Grp., LLC*,
2009 U.S. Dist. LEXIS 7701 (S.D.N.Y. Feb. 3, 2009)............................................................ 12

*Rascoe v. APM Terminals Va., Inc.*,
2013 U.S. Dist. LEXIS 26386 (E.D. Va. Mar. 29, 2013)........................................................ 10

*Summit Valley Indus. v. United Bhd. of Carpenters & Joiners*,
456 U.S. 717 (1982)................................................................................................................ 10

*Tootsie Roll Indus. v. Local Union No. 1 Bakery, Confectionery & Tobacco Workers' Intl. Union*,
1986 U.S. Dist. LEXIS 21517 (N.D. Ill. Aug. 14, 1986)......................................................... 11

*Trs of the Mason Tenders v. Faulkner*,
484 F. Supp. 2d 254 (S.D.N.Y. 2007).................................................................................. 7,8

*Trs. of the N.Y. City Dist. Council of Carpenters Pension Fund v. Dejil Sys.*,
2012 U.S. Dist. LEXIS 123143 (S.D.N.Y. Aug. 29, 2012)..................................................... 12

*UPS of Am., Inc. v. Net, Inc.*,
225 F.R.D. 416 (E.D.N.Y. 2005) ............................................................................................ 7

*Unite Nat'l Ret. Fund v. Veranda Mktg. Co.*,
2009 U.S. Dist. LEXIS 59447 (S.D.N.Y. July 9, 2009) ....................................................... 7,8

*United Paperworkers Int'l Union v. Misco, Inc.*,
484 U.S. 29 (1987).................................................................................................................. 4

*United States Fid. & Guar. Co v. Braspetro Oil Servs. Co.*,
369 F.3d 34 (2d Cir. 2004)..................................................................................................... 10

*Universal Cavalry Church v. City of New York*,
2000 U.S. Dist. LEXIS 17037 (S.D.N.Y. Nov. 27, 2000)..................................................... 8-9

## Statutes and Regulations

*Federal Statutes and Regulations*

29 U.S.C. § 185 ...........................................................................................................................10

29 U.S.C. § 1132(g)(2) .................................................................................................................6

Fed. R. Civ. P. 54(d) ....................................................................................................................9

Fed. R. Civ. P. 54(d)(1) ..............................................................................................................11

Fed. R. Civ. P. 56(c) .................................................................................................................5,9

Local Civ. R. 56.1(d) ................................................................................................................8,9

## Secondary Sources

*Black's Law Dictionary (8th ed. 2004)* .......................................................................................7

Plaintiffs, the Trustees of Empire State Carpenters Annuity, Apprenticeship, Labor-Management Cooperation, Pension and Welfare Funds (the "Funds"), submit the following memorandum of law in support of their Motion to Confirm an Arbitration Award and for Summary Judgment Against Defendant Claude Rodrigue d/b/a MR Drywall, Inc. ("Rodrigue").

## PRELIMINARY STATEMENT

The Funds are multi-employer labor-management trust funds operating pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA") and the Labor Management Relations Act of 1947 ("LMRA"). As will be established below, Rodrigue was doing business as MR Drywall, Inc. ("MR Drywall"), an unincorporated fictitious entity that was bound to a collective bargaining agreement that required it to remit contributions to the Funds. Following an audit of MR Drywall, which revealed that it was delinquent in its contributions, the Funds submitted the matter to arbitration pursuant to the collective bargaining agreement's arbitration clause. And, on February 23, 2013, the arbitrator awarded the Funds the sum of $641,009.32 against MR Drywall. Now, the Funds are seeking to (1) confirm the arbitration award against MR Drywall and (2) hold Rodrigue personally liable, as the sole proprietor of the fictitious MR Drywall, for any judgment entered against MR Drywall.

## STATEMENT OF MATERIAL FACTS

Since 1998, Rodrigue has conducted business under at least three different assumed names and entered into a number of collective bargaining agreements under these assumed names. Plaintiffs' Rule 56.1 Statement in Support of Their Motion for Summary Judgment ("SOF"), at ¶¶ 1-5. One was M. R. Drywall Distributors, Inc. ("MR Distributors"), a company that was incorporated on July 9, 1980 and dissolved by proclamation on September 24, 1997. SOF, at ¶¶ 4-5, 22; Declaration of Todd Dickerson ("Dickerson Decl."), Exhibit B; *id.*, Exhibit C, at pg. 4.

The second and third were M.R. Drywall Inc. ("M.R. Drywall") and MR Drywall (collectively, MR Distributors, M.R. Drywall, and MR Drywall shall be referred to as "MR Drywall"), which were never formally incorporated entities. SOF, at ¶¶ 1-3, 21; Dickerson Decl., Exhibit A; *id.*, Exhibit C, at pg. 4.

Rodrigue was MR Drywall's owner and he was responsible for its conduct.  Specifically, Rodrigue's own testimony establishes that:

- He was the only owner, shareholder, officer, and director of MR Drywall (SOF, at ¶ 23; Dickerson Decl., Exhibit C);

- He was the only person to supervise work performed by MR Drywall (*Id.*);

- He was the only person to have managerial responsibility for MR Drywall (*Id.*);

- He was the only person responsible for MR Drywall's labor relations (*Id.*);

- He was the only person responsible for executing collective bargaining agreements between MR Drywall and the Union and he was the individual that signed such agreements on MR Drywall's behalf (Dickerson Decl., Exhibit D, at 67:10-68:2); and

- He was the person that signed the collective bargaining agreement in question (Dickerson Decl., Exhibit D, at 70:3-17, 71:13-19, 72:7-13).

As is relevant to the instant action, Rodrigue, doing business as MR Drywall, entered into a Memorandum of Agreement dated May 21, 2006 (the "2006 Memorandum of Agreement"). SOF, at ¶ 4; Declaration of Richard J. Craven ("Craven Decl."), Exhibit D; Dickerson Decl., Exhibit D, at 71:13-72:13.  Rodrigue signed this document in the name of MR Distributors. SOF, at ¶ 4; Craven Declaration, Exhibit D.  However, Rodrigue testified that MR Distributors and MR Drywall are the same company. Dickerson Decl., Exhibit D, at 72:14-73:2, 73:21-24; *see also id.*, at 68:8-19.

Pursuant to this Memorandum of Agreement, Rodrigue agreed to be bound to a collective bargaining agreement between the Union and the "Associations" covering the period June 1, 2006

2

through May 31, 2011 (the "CBA"). SOF, at ¶ 5; Dickerson Decl., Exhibit D, at 66:17-25 (Q. "Did M.R. Drywall sign any union contracts?" A. "Yes." Q. "With which union?" A. "Carpenter."); *id.*, at 70:3-17 (containing Rodrigue's sworn statements that he was the one that signed the CBA: "I saw it once, I think, when I signed it for M.R. Drywall . . ."); *id.*, at 71:13-72:13 (containing Rodrigue's sworn statement that he was the one who signed the 2006 Memorandum of Agreement binding MR Drywall to the CBA: "That's the agreement that I signed with M.R. Drywall . . . . That's my signature").

The CBA required MR Drywall to make certain hourly contributions to the Funds for work performed within the trade and geographical jurisdiction of the Union. SOF, at ¶ 6. The CBA provides that its terms "shall remain in effect until May 31, 2011 and shall continue thereafter from year to year" unless written notice is given to modify the agreement. Craven Decl., Exhibit E, Article 41. The CBA further provides that MR Drywall shall be bound to the Funds' "rules, policies and regulations," which includes the Funds' Joint Policy for Collection of Delinquent Contributions (the "Collection Policy"). SOF, at ¶¶ 7-8. The Collection Policy requires employers such as MR Drywall to submit to an audit of their books and records. SOF, at ¶ 9. The Collection Policy further provides that if an employer fails to remit contributions, the matter shall be sent to arbitration before the Funds' designated arbitrator. SOF, at ¶ 10.

Pursuant to the Collection Policy, the Funds conducted an audit of MR Drywall's books and records covering the period January 1, 2008 through June 30, 2011. SOF, at ¶ 11. This audit revealed that MR Drywall failed to remit contributions in the principal amount of $438,717.24. SOF, at ¶ 12. The Funds initiated arbitration and, upon notice to all parties, a hearing was held on the matter on February 19, 2013. SOF, at ¶¶ 14-15. On February 23, 2013, the arbitrator rendered his award (the "Award"), finding that MR Drywall violated the terms of the CBA and ordering

3

MR Drywall to pay the Funds $641,009.32, consisting of unpaid contributions of $423,548.44, interest of $119,075.33, liquidated damages of $84,709.69, attorneys' fees of $595, audit costs of $5,237.50, and the arbitrator's fee of $750. SOF, at ¶ 18.  MR Drywall failed to pay any portion of this award. SOF, at ¶ 19.

## ARGUMENT

I.  **Legal Standards**

   A.  **Legal Standard On A Motion To Confirm An Arbitration Award**

The case law is clear that the role of a court in reviewing an arbitration award is extremely limited.  An arbitration award should be confirmed so long as the arbitrator "acted within the scope of his authority" and "the award draws its essence from the agreement." *Local 1199, Drug, Hosp. & Health Care Emples. Union, RWDSU, AFL-CIO v. Brooks Drug Co.*, 956 F.2d 22, 25 (2d Cir. 1992).  Neither a disagreement with the arbitrator's finding of fact, nor a difference of opinion about the correct interpretation of the contract, is an occasion for judicial intervention. *See, e.g.*, *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987) ("As long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed a serious error does not suffice to overturn his decision."); *Abram Landau Real Estate v. Bevona*, 123 F.3d 69, 74-75 (2d Cir. 1997) ("Even if a court is convinced the arbitrator's decision is incorrect, the decision should not be vacated so long as the arbitrator did not exceed the scope of his authority.") (citing *Leed Architectural Products, Inc. v. United Steelworkers of Am. Local 6674*, 916 F.2d 63, 65 (2d Cir. 1990)).  Indeed, confirmation of an arbitration award is a "'summary proceeding that merely makes what is already a final arbitration award a judgment of the court.'" *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006) (quoting *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 176 (2d Cir. 1984)).

4

Accordingly, a court "must grant the award unless the award is vacated, modified, or corrected." *Id.* (internal quotations omitted).

### B. Legal Standard On A Motion For Summary Judgment

"Summary judgment is warranted if 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law.'" *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (quoting Fed. R. Civ. P. 56(c)). "A fact is 'material' for these purposes when it 'might affect the outcome of the suit under the governing law.'" *Jeffreys*, 426 F.3d at 553 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "An issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.*

"When considering a motion for summary judgment, a court must construe the evidence in the light most favorable to the nonmoving party, drawing all inferences in that party's favor." *Jeffreys*, 426 F.3d at 553. "However, 'the mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could *reasonably* find for the [nonmoving party].'" *Id.* (quoting *Anderson*, 477 U.S. at 252) (emphasis added by the *Jeffreys* court).

### II. The Court Should Confirm The Award

The Court should confirm the Award as the arbitrator acted within the scope of his authority and the Award draws its essence from the CBA.

The CBA required MR Drywall to make certain hourly contributions to the Funds for work it performed within the trade and geographical scope of the Union. SOF, at ¶ 6. The CBA further bound MR Drywall to the Funds' Collection Policy, which provided that if MR Drywall failed to

5

remit contributions, the dispute shall be sent to arbitration before the Funds' designated arbitrator. SOF, at ¶¶ 7-10. When an audit of MR Drywall covering the period January 1, 2008 through June 30, 2011 revealed certain delinquencies, the Funds submitted the matter to arbitration in accordance with the Collection Policy's arbitration clause. SOF, at ¶¶ 11-15. And, on February 23, 2013, the arbitrator rendered his award, finding that MR Drywall violated the terms of the CBA when it failed to make all required contributions to the Funds and ordering MR Drywall to pay the Funds the sum of $641,009.32, consisting of contributions of $423,548.44, interest of $119,075.33, liquidated damages of $84,709.69, attorneys' fees of $595, audit costs of $5,237.50, and the arbitrator's fee of $750. SOF, at ¶ 18.[1]

As is evident by the foregoing facts, the arbitrator acted within the scope of his authority in issuing the Award, which is consistent with the CBA's and Collection Policy's provisions. Therefore, the Court should defer to the arbitrator and confirm the Award.

Additionally, the Funds' Collection Policy provides that interest on delinquent contributions shall be calculated at the monthly compound interest rate of .75%. Craven Decl., Exhibit F, 2.1(C). Accordingly, should the Court confirm the Award, the Funds respectfully request the opportunity to submit calculations on the additional interest that has accrued since the date of the Award through the date judgment is entered against MR Drywall.

---

[1] Like Section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2), the Funds' Collection Policy also authorizes the recovery of liquidated damages at the rate of 20% of delinquent contributions, and attorneys' fees and costs incurred by the Funds in their efforts to collect an employer's delinquency. Craven Decl., Exhibit F, Article 6.

**III.    The Court Should Find That There Is No Genuine Issue Of Material
Fact That Rodrigue Is Liable For Any Judgment Issued Against MR Drywall**

There is no genuine issue of material fact that Rodrigue, as the sole proprietor of the unincorporated fictitious entity MR Drywall, should be held personally liable for any judgment issued against MR Drywall arising out of the instant motion.

A sole proprietorship is defined as "'[a] business in which one person owns all the assets, owes all the liabilities, and operates in his or her personal capacity.'" *UPS of Am., Inc. v. Net, Inc.*, 225 F.R.D. 416, 421 (E.D.N.Y. 2005) (citing Black's Law Dictionary (8th ed. 2004)).  It is well-established that a sole proprietor of an unincorporated business is personally liable for that business's debts. *See, e.g.*, *Unite Nat'l Ret. Fund v. Veranda Mktg. Co.*, 2009 U.S. Dist. LEXIS 59447, at *44 (S.D.N.Y. July 9, 2009) ("Ades is the sole proprietor of Veranda, an unincorporated business under common control with Ariela.  In that vein, Ades is personally liable for Veranda's business debts."); *Trs of the Mason Tenders v. Faulkner*, 484 F. Supp. 2d 254, 257 (S.D.N.Y. 2007) ("Faulkner did not create a distinct business entity by operating his sole proprietorship under the [doing business as] name [of] American Demolition.  American Demolition and Faulkner constitute one person under the law, and any liability assumed by American Demolition was also assumed by Faulkner in his individual capacity.").

Here, Rodrigue is clearly the sole proprietor of MR Drywall, an unincorporated and fictitious entity owned and operated by Rodrigue. SOF, at ¶¶ 21-22.  Indeed, Rodrigue's own sworn statements establish that:

- He was the only owner, shareholder, officer, and director of MR Drywall (SOF, at ¶ 23; Dickerson Decl., Exhibit D);

- He was the only person to supervise work performed by MR Drywall (*Id.*);

- He was the only person to have managerial responsibility for MR Drywall (*Id.*);

7

- He was the only person responsible for MR Drywall's labor relations (*Id*.);

- He was the only person responsible for executing collective bargaining agreement between MR Drywall and the Union and he was the individual that signed such agreements on MR Drywall's behalf (Dickerson Decl., Exhibit D, at 67:10-68:2); and

- He was the person that signed the collective bargaining agreement in question (Dickerson Decl., Exhibit D, at 70:3-17, 71:13-19, 72:7-13).

In light of Rodrigue's own sworn statements, there can be no genuine issue of material fact that he was the sole owner and officer of the fictitious entity MR Drywall. As such, Rodrigue is personally liable for MR Drywall's debts, including any judgment issued against it in connection with this action. *See, e.g.*, *Unite Nat'l Ret. Fund*, 2009 U.S. Dist. LEXIS 59447, at *44; *Trs. of the Mason Tenders*, 484 F. Supp. 2d at 257.

Moreover, Rodrigue's Rule 56.1 Supplemental Response and Counterstatement of Material Facts ("56.1 Counterstatement") fails to raise genuine issues of material fact on this issue.

First, the vast majority of Rodrigue's 56.1 Counterstatement contains generalized and conclusory denials unsupported by admissible evidence. *See* Rodrigue's 56.1 Counterstatement. Your Honor raised the same point at the June 14, 2016 pre-motion conference in this matter and gave Rodrigue additional time to submit a revised and compliant 56.1 Counterstatement. *See* Dkt. No. 53. Unfortunately Rodrigue did not correct his mistakes, and his revised 56.1 Counterstatement is effectively as deficient and non-compliant as his first attempt. As a result, the vast majority of the 56.1 Counterstatement is insufficient to create a genuine issue of material fact and the vast majority of the Funds' 56.1 Statement of Facts should be deemed admitted. *See, e.g.*, *Cooper v. Gottlieb*, 2000 U.S. Dist. LEXIS 129636, at *12 (S.D.N.Y. Sept. 4, 2000) (holding that a party's "conclusory denial is wholly inadequate under Local Civil Rule 56.1(d)"); *Universal Cavalry Church v. City of New York*, 2000 U.S. Dist. LEXIS 17037, at *6 n.5 (S.D.N.Y. Nov. 27,

2000) ("[A]ny of the Defendants' 56.1 Statements that Plaintiffs do not specifically deny and support such denial with specific evidence . . . will be deemed admitted for purposes of this summary judgment motion.") (citing Fed R. Civ. P. 56 and Local Civ. R. 56.1)).

And second, even if Rodrigue's 56.1 Counterstatement's generalized denials are properly considered, some of them are just flat out wrong. For example, when the Funds claimed that "Rodrigue executed a Memorandum of Agreement dated May 31, 2006 on behalf of M.R. Drywall Distributors, Inc.," a key issue in this case, Rodrigue reflexively responded "[d]eny, as the purported signature in the document does not identify the name of the signor . . . ." 56.1 Counterstatement, at ¶ 4. However, when Rodrigue was shown this same document at his deposition, he very clearly testified that he was the one that signed it. Dickerson Decl., Exhibit D, at 71:13-72:13 (Q. "Do you recognize this document?" A. "Yes. That's the agreement that I signed with M.R. Drywall. . . . ." Q. "Whose signature is below [the line reading M.R. Drywall Distributors Inc.]?'" A. "That's my signature."). Rodrigue's 56.1 Counterstatement's unsupported and inaccurate allegations on this (and other) material issues of fact are patently insufficient to create a genuine issue of material fact in this case.

For the reasons set forth above, we respectfully request that the Court confirm the Award in its entirety and find that Rodrigue is personally liable for any judgment issued against MR Drywall arising out of the instant motion.

**IV.    The Funds Are Entitled To Attorneys' Fees And Costs**

The Court should find that the Funds are entitled to their attorneys' fees and costs incurred in the instant action in an amount to be established in a post-judgment proceeding in accordance with Rule 54(d) of the Federal Rules of Civil Procedure.

    **A.    The Funds Are Entitled To Attorneys'
       Fees And Costs Under The Collection Policy**

9

Section 301 of the LMRA "provides a statutory basis for enforcing the contractual terms of the CBA." *Gesualdi v. General Concrete, Inc.*, 2013 U.S. Dist. LEXIS 42385, at *16 (E.D.N.Y. Feb. 1, 2013). The remedies available in such LMRA actions are "those permitted in the relevant CBA and trust agreements." *Finkel v. Red Hook Sign & Elec. Corp.*, 2013 U.S. Dist. LEXIS 115669, at *11 (E.D.N.Y. July 3, 2013).

However, under LMRA § 301, prevailing parties are not necessarily entitled to attorneys' fees and costs incurred in litigating the action. This is due largely to the "American Rule," which provides that "attorney's fees 'are not ordinarily recoverable in the absence of a statute or enforceable contract providing therefor.'" *Summit Valley Indus. v. United Bhd. of Carpenters & Joiners*, 456 U.S. 717, 721 (1982) (quoting *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 717 (1967)). And, it is well established that the LMRA itself does not explicitly authorize the recovery of such fees and costs as an element of damages. *See, e.g.*, *Mayes v. Local 106, Int'l Union of Operating Eng'rs*, 1995 U.S. Dist. LEXIS 1669, at *102 (N.D.N.Y. Jan. 20, 1995).

However, the result changes when the applicable contract provides for the recovery of attorneys' fees and costs. Indeed, when there is a valid and enforceable contractual agreement providing for such recovery, courts are directed to enforce the parties' agreement. *See United States Fid. & Guar. Co v. Braspetro Oil Servs. Co.*, 369 F.3d 34, 74 (2d Cir. 2004) ("Under the American Rule, however, 'parties may agree by contract to permit recovery of attorneys' fees, and a federal court will enforce contractual rights to attorneys' fees if the contract is valid under applicable state law.'") (quoting *McGuire v. Russell Miller, Inc.*, 1 F.3d 1306, 1313 (2d Cir. 1993)); *cf. Rascoe v. APM Terminals Va., Inc.*, 2013 U.S. Dist. LEXIS 26386, at *12 (E.D. Va. Mar. 29, 2013) (refusing to award attorneys' fees only after finding that neither the LMRA nor the

10

collective bargaining agreement authorized the award of such fees); *Tootsie Roll Indus. v. Local Union No. 1 Bakery, Confectionery & Tobacco Workers' Intl. Union*, 1986 U.S. Dist. LEXIS 21517, at *14 n. 6 (N.D. Ill. Aug. 14, 1986) (same).

Here, Rodrigue agreed to be bound to the CBA. SOF, at ¶ 5; Dickerson Decl., Exhibit D, at 66:17-25, 70:3-17, 71:13-72:13. In doing so, Rodrigue agreed to be bound to the Funds' Collection Policy. *See* Craven Decl., Exhibit E, Article 17, Section 3 ("The Employer shall be bound by and shall comply with the agreements, declarations of trust, plans and/or rules, policies and regulations of the applicable Funds . . . ."). And, under the Collection Policy, the Funds are entitled to an award of attorneys' fees "for all time spent by [the Funds'] Counsel in collection efforts" arising from an employer's failure to pay required contributions. Craven Decl., Exhibit F, 6.2. Additionally, the Collection Policy provides for the recovery of costs and expenses "incurred by the Funds in . . . collecting a delinquency." Craven Decl., Exhibit F, 1.1(C)(4). As such, pursuant to the CBA and Collection Policy, the Court should award the Funds their reasonable attorneys' fees and expenses incurred in this action in an amount to be determined in a post-judgment proceeding.

### B. The Funds Are Entitled To Attorneys' Fees And Costs Due To MR Drywall's Failure To Abide By The Award

In addition to the above, the Funds are also entitled to attorneys' fees and costs incurred in the instant action due to Rodrigue's failure to abide by the Award.

It is well established that courts routinely award costs to the prevailing plaintiffs in actions to confirm an arbitration award. *See, e.g.*, *Abondolo v. Jerry WWHS Co.*, 829 F. Supp. 2d 120, 123 (E.D.N.Y. 2011) (noting that this practice "is consistent with the general principle that, in most civil suits, 'costs—other than attorney's fees—should be allowed to the prevailing party.'") (quoting Fed. R. Civ. P. 54(d)(1)). It is equally well established that "when a party fails to abide

11

by an arbitrator's determination without justification . . . attorney's fees may be awarded." *Dist. Council No. 9 v. All Phase Mirror & Glass*, 2006 U.S. Dist. LEXIS 34836, at *4 (S.D.N.Y. May 26, 2006) (citing *Bell Prod. Engineers Ass'n v. Bell Helicopter Textron*, 688 F.2d 997, 999 (5th Cir. 1982)); *see also Trs. of the N.Y. City Dist. Council of Carpenters Pension Fund v. Dejil Sys.*, 2012 U.S. Dist. LEXIS 123143, at *11 (S.D.N.Y. Aug. 29, 2012) ("In confirmation proceedings, 'the guiding principle has been stated as follows: when a challenger refuses to abide by an arbitrator's decision without justification, attorney's fees and costs may properly be awarded.'") (quoting *N.Y. City Dist. Council of Carpenters Pension Fund v. Angel Constr. Grp., LLC*, 2009 U.S. Dist. LEXIS 7701, at *2 (S.D.N.Y. Feb. 3, 2009)).

Here, MR Drywall had no justification for failing to abide by the Award. As noted above, the Funds properly submitted their dispute with MR Drywall to arbitration pursuant to the Collection Policy's arbitration clause. SOF, at ¶¶ 11-15. So far, MR Drywall has given no plausible explanation for its failure to abide by the Award. Instead, it appears that MR Drywall just forgot to appear at the arbitration hearing, with its owner being negligently unaware of the issue. *See* Dickerson Decl., Exhibit D, at 133:3-22 ("Apparently, there was a hearing. [MR Drywall's representative] came up with $650,000 and he never made it there, I guess. I never knew anything about it."); *id.*, at 134:7-9 (Q. "Did you find out about the arbitration award through this lawsuit." A. "Yes."). Accordingly, the Court should find that MR Drywall unjustifiably failed to abide by the Award and that the Funds are entitled to reasonable costs and attorneys' fees incurred in this action, in amounts to be determined in a post-judgment proceeding.

## **CONCLUSION**

For the foregoing reasons, the Funds submit that their motion to confirm the award and their motion for summary judgment against Rodrigue should be granted in its entirety. Accordingly, the Funds respectfully request that the Court:

1. Confirm the Award in all respects;

2. Award judgment in favor of the Funds and against MR Drywall in the amount of $641,009.32 pursuant to the Award;

3. Award the Funds additional prejudgment interest that has accrued since the date of the Award through the date judgment is entered, in an amount to be determined based on further submissions;

4. Award the Funds post-judgment interest at the statutory rate;

5. Set a post-judgment briefing schedule regarding the Funds' recovery of attorneys' fees and other costs incurred in collecting the delinquencies;

6. Issue an order finding that Rodrigue is the sole proprietor of MR Drywall and is liable for MR Drywall's debts, including any judgment issued against MR Drywall that arises out of the instant motion; and

7. Award the Funds such other and further relief as the Court deems just and proper.

Dated: New York, New York
August 24, 2016

**VIRGINIA & AMBINDER, LLP**

By: _____/s/_____
Todd Dickerson
40 Broad Street, 7th Floor
New York, New York 10004
Telephone: (212) 943-9080

13

Fax: (212) 943-9082
*Attorneys for Plaintiffs*

14