UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

TRUSTEES OF EMPIRE STATE CARPENTERS
ANNUITY, APPRENTICESHIP, LABOR-
MANAGEMENTS COOPERATION, PENSION
and WELFARE FUNDS,                                  Case No.:  2:13-CV-5760
                                                    (JS/WDW)
                                   Plaintiffs,

        -against-

CLAUDE RODRIGUE d/b/a MR DRYWALL, INC.,
C.R. DRYWALL CO. INC., and C.R. DRYWALL
RESIDENTIAL, INC.,
                                   Defendants.

---

# MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO CONFIRM AN ARBITRATION AWARD AND FOR SUMMARY JUDGMENT

**TABNER, RYAN & KENIRY, LLP.**
William F. Ryan, Jr., Esq.
*Attorneys for Defendants Claude Rodrigue*
   *and CR Drywall Residential, Inc..*
18 Corporate Woods Boulevard
Suite 8
Albany, NY  12211
(518) 512-5320
(518) 465-5112 (facsimile)
wrf@trklaw.com
Bar Roll No.: WR7051

## **Table of Contents**

Counter - Statement of Material Facts ...............................................................................1

Argument ..........................................................................................................................2

    I.      Legal Standard on Motion to Confirm an Arbitration Award ...........................2

    II.    Legal Standard on a Motion for Summary Judgment Award ...........................3

    III.   The Court Should Deny Plaintiffs' Request to Confirm the Award ..................3

           A.  The Deficiencies with the Collection Policy ....................................3

           B.  The Deficiencies with the Collective Bargaining Agreement .........5

           C.  The Deficiencies with Audit ............................................................7

           D.  The Deficiencies with the Arbitration Proceedings ........................8

    IV.   The Court Should Deny Plaintiffs' Summary Judgment Motion Seeking to Hold Mr. Rodrigue Liable as a Matter of Law for the $640,000 Award .......9

           A.  The Defects in Due Process ............................................................10

           B.  De Facto Corporation Defense  .....................................................10

           C.  Estoppel, Laches, and Waiver .......................................................13

    V.    The Court Should Dismiss the ERISA Claims and Deny Plaintiffs' Request for Length Pre-Judgment Interest, Attorneys' Fees and Costs ...................14

    Conclusion ....................................................................................................15

# TABLE OF AUTHORITIES

## Federal Cases

*Boys v. Monster Energy Co.,*
   983 F. Supp. 2d 338 (S.D.N.Y. 2013) ...............................................3

*Herrenknecht Corp. v. Best Rd. Boring No. 06 Civ. 5106 (JFK)*
   2007 U.S. Dist. LEXIS 28495, 2007 WL 1149122, at * 2 (S.D.N.Y. Apr. 16, 2007)......2

*L-TEC Elecs. Corp. v. Cougar Elec. Org. Inc.,*
   198 F.3d 85, 87 (2d Cir. 1999) ...............................................10, 11, 12

*Ottley v. Schwartzberg*
   819 F.2d 373 (2d Cir. 1987) ...............................................14

## State Cases

*Boslow Family Limited Partnership v. Glickenhaus & Co.,*
   7 N.Y.3d 664 (2006) ...............................................13

*Garzo v. Maid of the Mist Steamboat Co.,*
   303 N.Y. 516 (NY Ct. Appeals 1952) ...............................................10

*Holm v. C.M.P. Sheet Metal, Inc.,*
   89 A.D.2d 229 (4th Dep't 1982) ...............................................13

*Kaisman v. Harnandez,*
   61 A.D.3d 565 (1st Dep't 2009) ...............................................12

## Statues and Rules

9 USC §9...............................................3

Fed. R. Civ. P. Rule 56 ...............................................3

## COUNTER STATEMENT OF MATERIAL FACTS

In this action, Plaintiffs seek to recover over $640,000 against MR Drywall, Inc. ("MR Drywall") and Defendant Claude Rodrigue based on an unsigned collective bargaining agreement from June 1, 2006 to May 31, 2011 ("CBA"). (Plaintiffs' Rule 56.1 Statement ("SOMF") at ¶10, 11 and 18). Plaintiffs have not identified who signed the CBA, but allege that it obligated MR Drywall, Inc. to abide by unidentified and subsequently created "policies". (SOMF ¶7; Craven Dec., Ex. E). Plaintiffs further allege that they unilaterally created a Collection Policy, dated March 2013, and that the policy contained provisions requiring MR Drywall to participate in arbitration and pay attorneys' fees. (SOMF ¶8; Craven Dec., Ex. F).

Plaintiffs further assert that MR Drywall failed to remit certain contributions from January 1, 2008 to June 30, 2011 (which was beyond the CBA term). (SOMF ¶11-12). MR Drywall apparently stopped operating at some point in time and did not sign any subsequent CBAs. (Quinn Affidavit; Ex. D, at 73).

Plaintiffs further allege that MR Drywall was served by mail in January 2013 with a notice of intent to arbitrate. (Craven Dec., Ex. G). The notice specified the place of arbitration as Plaintiff's office in Long Island before Plaintiffs' private arbitrator. (*Id.*).

Plaintiffs allege that MR Drywall (from upstate New York) failed to appear at the arbitration in Long Island. (SOMF ¶15). Plaintiffs privately selected arbitrator (a New Jersey attorney) apparently conducted an unrecorded hearing and heard some unknown proof in February 2013. (Quinn Supp. Affidavit; Craven Dec., Ex. G). Thereafter, the arbitrator rendered an arbitration award on default against MR Drywall for $641,009.32. (Quinn Affidavit, Ex. D).

Shortly thereafter, Plaintiffs filed this action seeking, among other things, to confirm the arbitration award against Mr. Rodrigue. Plaintiffs assert that they did not need to name Mr.

1

Rodrigue as a party to the arbitration proceeding because MR Drywall was either a "fictitious" or an inactive entity, but that they can now sue Mr. Rodrigue on the arbitration award and confirm it individually against him, regardless if he had an opportunity to defend. See Document Number 1, 63.

Plaintiffs further desire pre-judgment interest (unspecified in amount) for the three to four years they have delayed in seeking to confirm the award.  Plaintiffs also seek attorneys' fees in an unknown and unspecified amount based on their Collection Policy, dated March 2013 (apparently created after MR Drywall was no longer a member of any CBA).[1] (SOMF ¶5-6, Craven Dec., Ex. E, F).

## ARGUMENT

**I.     Legal Standard on Motion to Confirm an Arbitration Award**

Section 9 of the Federal Arbitration Act ("FAA") provides that "[i]f the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration... then ... any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title."  9 USC § 9.   Where "there is no indication that the arbitration decision was made arbitrarily, exceeded the arbitrator's jurisdiction, or otherwise was contrary to law . . . a court must confirm the award upon the timely application of any party." *Herrenknecht Corp. v. Best Rd. Boring, No. 06 Civ. 5106 (JFK)*, 2007 U.S. Dist. LEXIS 28495, 2007 WL 1149122, at *2 (S.D.N.Y. Apr. 16, 2007).

---

[1] Additional facts are set forth in the accompanying affidavits and supplemental affidavits of Claude Rodrigue and Brian M. Quinn.

2

## II.    Legal Standard on a Motion for Summary Judgment

To prevail under Rule 56, the movant must "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "The movant bears the burden of demonstrating the absence of a question of material fact." *Boys v. Monster Energy Co.*, 983 F. Supp. 2d 338, 347 (S.D.N.Y. 2013).  The Court views the facts "'in the light most favorable'" to the non-moving party. *Id.* (citation omitted).

"To survive a summary judgment motion, the opposing party must establish a genuine issue of fact by 'citing to particular parts of materials in the record.'" *Id.* at 347, citing Fed. R. Civ. P. 56(c)(1).  However, "[o]nly disputes over 'facts that might affect the outcome of the suit under the governing law' will preclude a grant of summary judgment." *Id.* (citation omitted).

## III.    The Court Should Deny Plaintiffs' Request to Confirm the Award

The Court should deny Plaintiffs' request to confirm the arbitration award.  As explained below, the award rests on numerous deficiencies.   In fact, the parties did not even agree to arbitrate their dispute. 9 USC § 9.

### A.    The Deficiencies with the Collection Policy

Plaintiffs assert that their right to arbitrate is based on Article 2.2 of the Collection Policy.  (Craven Dec., ¶12; Ex. F).  That provision, however, does not contain any agreement to arbitrate or provide any authority for the arbitrator to enter a default award based on an employer's non-appearance.  (Craven Dec., Ex. F, Article 2.2).  In fact, the Collection Policy requires Plaintiffs to stop arbitration and commence an action in federal court, pursuant to Article 3 of the Collection Policy, upon any objection of an employer to arbitration.  (Craven Dec., Ex. F, Article 2.2).

3

Indeed, Article 2.B of the Collection Policy expressly provides that if "an employer objects to the arbitration … by means other than commencement of an action to stay arbitration, the matter shall be pursued … in Federal Court." (Craven Dec., Ex. F, Article 2.2(B)).  Similarly, Article 3 further provides that "[i]f the employer does not agree to arbitration" Plaintiffs "shall initiate legal action in Federal Court."  (Craven Dec., Ex. F, Article 3.1).

Here, the failure of MR Drywall to appear or participate in the arbitration was a clear objection that precluded Plaintiffs from obtaining any default judgment in any arbitration proceedings.  To assume that MR Drywall and Mr. Rodrigue did not appear because they were consenting to the $640,000 award defies logic.  Moreover, the arbitrator did not even inquire about the reason for MR Drywall's whereabouts or its failure to appear.  Rather, the arbitrator merely assumed that he had the authority to enter an award based on an employer's non-appearance, regardless of the reason.

Further, the parties also dispute the validity and enforceability of the Collection Policy as against MR Drywall and Mr. Rodrigue. (*See generally* Rodrigue Affidavit and Supplemental Affidavit).  There is no evidence that the Collection Policy was signed by MR Drywall or Mr. Rodrigue.  There is no evidence that they were even provided a copy of it at any time in the past, or notified of its terms.  There is also no evidence that the Collection Policy (dated March 2013) was in existence prior to the date of the arbitration award (dated February 2013).  In fact, the Collection Policy is dated March 11, 2013, after the arbitration award was signed. (Craven Dec., Ex. F, at 10).  Plaintiffs therefore have not established as a matter of law that the Collection Policy was binding on MR Drywall or Mr. Rodrigue.

Further, the only basis upon which Plaintiffs assert the Collection Policy applied stems from a misquoted sentence in the CBA.  Specifically, Plaintiffs assert that the CBA provides that

4

they agreed to be bound by the "agreements" and "policies" of the funds. (SOMF ¶7; Craven Dec. Ex. E).  As explained below, the CBA relied upon by Plaintiffs containing this language is not even signed.  (Craven Dec., Ex. E).  The Collection Policy is also dated after the arbitration award. (Craven Dec., Ex. F).

However, even ignoring these fatal defects, that CBA does not define "agreements" or "policies" or clearly state that this provision applied prospectively.  As such, there is an issue of fact regarding whether the parties intended this provision to include the Collection Policy, including the version of the collection policy relied upon by Plaintiffs that was not even in existence at the time.

Further, there is also an exception to this provision for instances where the fund's agreements and policies are inconsistent or in conflict with the purported agreement. (Craven Dec., Ex. E Art. 17, §3).  As is the case here, Plaintiffs fail to identify any arbitration, choice of forum, or attorneys' fees provision in the CBA.  As such, the inclusion of these terms in a subsequently and unilaterally created Collection Policy would in fact materially alter the terms of the parties' initial (alleged) bargain and should therefore be considered as inconsistent and in conflict with the initial bargain.  Indeed, if Plaintiffs wanted these provisions included in their bargain, they should have included them in the collective bargaining agreement.

B.      **The Deficiencies with the Collective Bargaining Agreement**

There are also disputed issues regarding what the parties agreed upon regarding the terms of the CBA.  As is evidenced from the record, the CBA relied upon by Plaintiffs is not even signed. (Craven Dec., Ex. E).

In this regard, the arbitrator relied upon some unidentified "proof" to determine that "[t]he Employer is a signatory to the Agreement with the Union".  (Craven Dec., Ex. H).

5

Despite repeated demands, however, Plaintiffs have been unable to produce the alleged signature page from the applicable CBA or any other "proof" allegedly relied upon by the arbitrator. (Quinn Supp. Affidavit).   Even on this motion, Plaintiffs take the brazen step of submitting an unsigned copy of the CBA upon which it relies.   This underscores the arbitrary nature of the arbitration at issue in this case: there was no evidence to support this finding and it is based on a false statement by the arbitrator.

Moreover, Plaintiffs attempt to rectify their deficient submission by selectively misquoting Mr. Rodrigue's deposition testimony.   During the deposition, Plaintiffs' counsel purported to show Mr. Rodrigue a copy of the subject CBA. (Quinn Affidavit, Ex. C, at 69-70). Mr. Rodrigue's counsel objected, as the document had likely not been previously produced in response to Plaintiff's discovery demand.   Of course, the document had not been provided because it did not contain any signature page and counsel did not want to afford Mr. Rodrigue the opportunity to review it beforehand or discuss it with his counsel.

What transpired at that point was outlandish.   When Plaintiffs' counsel asked if Mr. Rodrigue had an opportunity to review the document, Mr. Rodrigue responded, "No". *(Id.).* Counsel then proceeded to ask questions quickly to prevent Mr. Rodrigue from finishing his review of the lengthy document. *(Id.).*   Mr. Rodrigue responded that he "guess[ed]" that the document was a "bargaining type of contract" and that he thought he signed it for MR Drywall but that he never saw it again.   (*Id.*, at 70).

These generalized statements are not sufficient to grant summary judgment.   Indeed, Mr. Rodrigue was merely guessing that the agreement applied in light of counsel providing him a copy of it.   He merely assumed it had a signature page based on his limited review of the document and Plaintiff's counsel's failure to disclose it prior to the deposition.   As Mr. Rodrigue

never saw the document again (assuming he ever saw it even once before), he was clearly not agreeing that the terms in the document were the same as what was allegedly signed. Moreover, as Plaintiffs' counsel did not have any actual signed document, it would have been impossible for Mr. Rodrigue to confirm the validity of the document, especially after a period of not seeing it for years. At best, Mr. Rodrigue thought the document looked familiar and assumed he had seen it at least once before. However, neither party can say with any degree of confidence whether or not they signed it and whether or not the specific draft referenced by Plaintiffs contains the same terms as the document allegedly signed 10 years ago.

Further, the document purportedly signed by MR Drywall is a Memorandum of Agreement, dated May 31, 2006 ("2006 MOU"), which purports to cover the time period of 2006-2011. (Craven Dec., Ex. D). To support their position, Plaintiffs do not purport to cite any of the terms from the 2006 MOA or any of the terms from the 2002 to 2006 agreement referenced therein, notwithstanding the fact that this document is signed. Plaintiffs also fail to explain why MR Drywall would sign two collective bargaining agreements for overlapping time periods.

In addition, as explained above, Plaintiffs rely upon the enforceability of the unsigned collective bargaining agreement to enforce the arbitration provision from the Collection Policy. Given the disputed fact over the validity of the subject CBA, Plaintiffs have not established that the Collection Policy (or its arbitration provision) applied to MR Drywall or Mr. Rodrigue and this in turn precludes them from relying on the arbitration provision.

## C.   The Deficiencies with the Audit

Plaintiffs also rely upon an audit that they do not discuss or cite in their motion papers. In fact, Plaintiffs seek a judgment for more than $640,000 without even identifying the document

7

upon which they base their calculations. The arbitrator, moreover, referred to the audit as having been made by an "independent auditor" and did not even question the accuracy of it based on an attachment to the arbitration award, yet Plaintiffs failed to provide the attachment. The arbitrator (and Plaintiffs) did not even specify the name of the auditor.

In any event, the purported audit appears to be unverified and unsigned. (Dickerson Dec., Document 61-4, page 123-132). It appears to consist of an unexplained spreadsheet that appears to include amounts due from CR Drywall. Plaintiffs fail to explain the reliability of the audit and whether or not any amounts owed by CR Drywall were also included in the audit. Plaintiffs also fail to explain whether or not the audit included non-union and non-covered work in the calculations. Plaintiffs also have not provided any proof in terms of what transpired at the purported arbitration hearing and what proof the arbitrator relied upon. At the very least, Plaintiffs should be required to file a certified record of the proceedings to determine whether or not any evidence supports them, especially as Plaintiffs are in the exclusive possession of such information and have not shared it accordingly.

Plaintiffs' failure to disclose the alleged audit to the court and any details surrounding its creation evidence their strategy in this case – to try to avoid reaching the merits of these issues and by hiding behind generalizations about lengthy documents and relying on a person with no personal knowledge of the parties' relationship.

### D.     The Deficiencies with the Arbitration Proceedings

As explained above, Plaintiffs have not provided a copy of the arbitration transcript or any of the affidavits of service. (Quinn Supp. Affidavit). Plaintiffs, moreover, failed to name Mr. Rodrigue as a party to that proceeding, despite its current reasoning that MR Drywall is a "fictitious" entity. (Quinn Affidavit, Ex. D). Indeed, if MR Drywall were not treated as a

corporation, the arbitration proceeding against MR Drywall would be a nullity based on Plaintiffs' failure to name and serve the proper party. In fact, under Plaintiffs' logic, there would have been no defendant in the arbitration if MR Drywall were fictitious and, as such, there would have been no party against which the Plaintiffs could confirm the award.

Moreover, Plaintiffs have not provided any evidence that Mr. Rodrigue was served or had proper notice of the proceedings. In fact, Plaintiffs have not even alleged that the arbitrator had any rules for the service of individuals or procedures for defaults. Plaintiffs also failed to provide Mr. Rodrigue with any notice that they intended to obtain an award against him by commencing arbitration against MR Drywall as the named defendant, and then subsequently seeking to obtain judgment against Mr. Rodrigue directly. The notice of intent to arbitration itself expressly limited relief to a default against only the company (not the owner).

Moreover, the arbitration occurred with a New Jersey attorney unilaterally selected by Plaintiffs. (Craven Dec., Ex. G-H). The arbitrator does not even appear to possess a New York license to practice law. He is apparently used by Plaintiffs for these matters on a "permanent" basis. (Craven Dec., Ex. G-H). His decision in this case is likely similar or essentially verbatim to his prior decisions in other cases. In addition, the alleged notice was by way of mail rather than personal delivery, and there has been no showing of any compliance with any arbitration rules. The arbitration was also conducted at Plaintiffs' Long Island office outside of MR Drywall and Mr. Rodrigue's county of residence. (Craven Dec., Ex. G-H).

Accordingly, the Court should deny Plaintiffs' requests to confirm the award.

## IV.    The Court Should Deny Plaintiffs' Summary Judgment Motion Seeking to Hold Mr. Rodrigue Liable as a Matter of Law for the $640,000 Award

The Court should also deny Plaintiffs' summary judgment motion seeking to hold Mr. Rodrigue liable as a matter of law for the $640,000 arbitration award.

9

### A.     The Defects in Due Process

Plaintiffs' approach has deprived Mr. Rodrigue of a full and fair opportunity to litigate the audit report and damages.  The notice of arbitration was served on a non-existent entity (according to Plaintiffs).  It was addressed solely to MR Drywall, Inc., and instructed that in the event of default, an award would be issued against only MR Drywall, Inc.  It did not inform any of the other defendants that the plaintiffs would also be seeking to bind them to the arbitration findings or hold them personally liable for the award.  In fact, Plaintiffs consciously failed to provide them with any notice of those proceedings.  The notice of arbitration itself was served by mail and addressed to only MR Drywall, Inc.  In addition, the notice of intent to arbitrate was served at a time when the entity MR Drywall was apparently no longer operating, thereby removing any incentive from MR Drywall to appear and defend. (Craven Dec., Ex. G; Quinn Affidavit, Ex. D, at 73).

### B.     De Facto Corporation Defense

Plaintiffs assert that Mr. Rodrigue should be held personally liable for any judgment against MR Drywall because he was doing business as MR Drywall.  In response, Mr. Rodrigue asserts that MR Drywall is a *de facto* corporation and that he cannot be held personally liable for its debts or obligations.

"Where . . . a corporation carries on its affairs and exercises corporate powers as before, it is a *de facto* corporation . . . and ordinarily no one but the state may question its corporate existence." *Garzo v. Maid of the Mist Steamboat Co.*, 303 N.Y. 516, 524 (NY Ct. Appeals 1952) (internal quotation marks omitted); *L-TEC Elecs. Corp. v. Cougar Elec. Org. Inc.*, 198 F.3d 85, 87 (2d Cir. 1999) ("[i]t is well established in New York that a company lacking formal corporate status but nonetheless operating as a corporation may be considered a *de facto* corporation and

those who treat the entity as a corporation in regular business dealings may not later deny its corporate status."). Indeed, "a person who deals with a *de facto* corporation cannot later deny its existence and proceed against its officers personally." *L-TEC Elecs. Corp., 198 F.3d at 87* (citations omitted).

Here, the doctrine of *de facto* corporation applies. New York State has laws under which the corporation might be organized; (2) there was an attempt to organize the corporation and, in fact, the subject corporation that allegedly signed the subject CBA (namely, MR Drywall Distributors, Inc.) was incorporated; and (3) the subject corporation exercised its corporate powers thereafter.[2]

As to the third prong, MR Drywall has allegedly signed the relevant CBA and MOUs, paid employees, conducted business, made employer contributions to benefit plans for years, and been sued individually as a defendant in various lawsuits, among other things. In fact, Plaintiffs and others have previously sued MR Drywall as an employer under ERISA, and have obtained relief from the courts directly against MR Drywall in its various forms, including against MR Drywall, Inc. (Quinn Affidavit, Ex. A, B). Specifically, Plaintiffs previously sued "MR Drywall Services, LLC", which according to them was a/k/a "MR Drywall, Inc." ("Prior Lawsuit"). (Quinn Affidavit, Ex. A).

In the Prior Lawsuit, Plaintiffs served the summons and complaint on MR Drywall, Inc. and listed "11 Drywall Lane, Vorheesville, New York" as the business address for "MR Drywall Services, LLC." (See Quinn Affidavit, Ex. A). In the Prior Lawsuit, Plaintiffs obtained a default against "MR Drywall, Inc." and a subsequent default judgment against "MR Drywall Services,

---

[2] Plaintiffs fail to identify what entity signed the applicable collective bargaining agreement, although "MR Drywall" and "MR Drywall, Inc." appear to be abbreviations for "MR Drywall Distributors, Inc."

LLC".   Plaintiffs' attorneys in that action treated these entities as the same and, in its notice of motion for the default judgment, sought the default judgment against "MR Drywall, Inc." (Quinn Affidavit, Ex. A).

Further, in the Prior Lawsuit, Plaintiffs alleged, and the court accepted as true, allegations that MR Drywall was a corporation.  (Quinn Affidavit, Ex. A).  In connection with this lawsuit, Plaintiffs also allegedly commenced arbitration directly against "MR Drywall, Inc." and admittedly failed to name Mr. Rodrigue (its alleged owner) as a party to that proceeding.  (Quinn Affidavit, Ex. D).  Plaintiffs also did not object to MR Drywall signing any documents in its own name and continued to treat MR Drywall as a *de facto* corporation up until this lawsuit.  (Quinn Affidavit, Exhibit C; *see also* Plaintiffs' declarations and exhibits).

Further, in the prior proceedings, the plaintiffs alleged, and the court accepted as true, allegations that MR Drywall was a corporation.  These constitute informal judicial admissions, which, at the very least, should preclude any grant of summary judgment in favor of the plaintiffs. *See Kaisman v. Hernandez*, 61 A.D.3d 565, 566 (1st Dep't 2009).[3]

Perhaps most damaging to Plaintiffs' case is the fact that they commenced arbitration directly against "MR Drywall, Inc." and failed to name its alleged owner as a party to that proceeding.  This is conclusive evidence that the plaintiffs have treated MR Drywall as a *de facto* corporation and, as such, they cannot now "deny its existence and proceed against its officers [or alleged owner] personally." *L-TEC Elecs. Corp.*, 198 F.3d at 87.

---

[3] Moreover, in this action, the plaintiffs have alleged that "Terry Bailey owns and manages MR Drywall."  This official judicial admission creates additional confusion that precludes summary judgment.

12

## C.      Estoppel, Laches, and Waiver

Plaintiff also fails to address the defenses of estoppel, laches, and waiver.  "[I]f neither of the parties [to a suit] is aware that corporate status has not been achieved, then corporation by estoppel may apply." *Boslow Family Limited Partnership v. Glickenhaus & Co.*, 7 N.Y.3d 664, 668 (2006).   Similarly, the doctrine of equitable estoppel "precludes a party at law and in equity from denying or asserting the contrary of any material fact which he has induced another to believe and to act on in a particular manner." *Holm v. C.M.P. Sheet Metal, Inc.*, 89 A.D.2d 229, 234 (4th Dep't 1982).   Under New York law, the application of equitable estoppel "requires three elements on the part of the party estopped: (1) conduct which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) intent that such conduct (representation) will be acted upon; and (3) knowledge, actual or constructive, of the true facts . . . The elements pertaining to the party asserting estoppel are (1) lack of knowledge of the true facts; (2) good faith reliance; and (3) a change of position . . . These are commonly termed the elements of detrimental reliance." *Id.*, at 234-35.

Here, as explained above, the parties treated MR Drywall as a legally independent entity. Plaintiffs in fact commenced the underlying arbitration proceeding against MR Drywall in its individual name.  Plaintiffs did not name Mr. Rodrigue as a party to any arbitration proceedings. Prior to this lawsuit, Mr. Rodrigue had no reason to believe that Plaintiffs would attempt to hold him personally liable for any of the alleged debts of MR Drywall.  This was based upon their prior history.

Based on Plaintiffs' conscious decision not to name Mr. Rodrigue as a party to any arbitration proceedings, he reasonably believed that Plaintiffs considered their dispute solely

13

with MR Drywall.  Had he been informed otherwise, Mr. Rodrigue would have obtained legal representation for himself to dispute any such debt.  Mr. Rodrigue therefore relied upon Plaintiffs' actions and should not be precluded from challenging the merits of the alleged debt.

**V.    The Court Should Dismiss the ERISA Claims and Deny Plaintiffs' Request for Lengthy Pre-Judgment Interest, Attorneys' Fees and Costs**

The confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court.  *Ottley v. Schwartzberg*, 819 F.2d 373 (2d Cir. 1987).  The grounds available to oppose the proceeding are very limited and the FAA is designed to achieve a prompt result.  *Id.*  For these reasons, the ERISA claims should not have been joined in the confirmation action, and the improper joinder justifies dismissal of the ERISA claims.  *Ottley v. Schwartzberg*, 819 F.2d 373 (2d Cir. 1987) ("[a]ctions to confirm arbitration awards . . . are straightforward proceedings in which no other claims are to be adjudicated").

Further, given that the ERISA claim has delayed the resolution of the confirmation action, the court should deny any request by plaintiffs to obtain attorneys' fees and costs and three to four years of pre-judgment interest on the confirmation award, especially in light of the much lower rates for post-judgment interest.

In addition, the request for attorneys' fees is based on the Collection Policy.  As explained above, neither MR Drywall nor Mr. Rodrigue were informed of those terms of that policy or agreed upon them.  In fact, the request for attorneys' fees is a material term that cannot just be unilaterally imposed against a party.  Such a result would be unconscionable.

The request for attorneys' fees and costs is also premature and not accompanied by any supporting affidavit setting forth the amounts or their reasonableness.

14

## Conclusion

For the reasons set forth above, Plaintiffs' motion should be denied, in its entirety, together with such other and further relief as the Court deems just and proper.

Dated:  September 30, 2016
        Albany, New York

                                            **TABNER, RYAN & KENIRY, LLP**

                                            /s/William F. Ryan, Jr.
                                            William F. Ryan, Jr., Esq.
                                            *Attorneys for Defendants Claude Rodrigue and*
                                                *CR Drywall Residential, Inc.*
                                            Tabner, Ryan & Keniry, LLP
                                            18 Corporate Woods Boulevard, Suite 8
                                            Albany, New York 12211
                                            Telephone: (518) 512-5312
                                            Facsimile: (518) 465-5112
                                            wfr@trklaw.com
                                            Bar Roll No.: WR7051

TO:    Todd Dickerson, Esq.
        Virginia & Ambinder, LLP
        *Attorneys for Plaintiffs*
        40 Broad Street, 7th Street
        New York, New York 10004