UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

TRUSTEES OF EMPIRE STATE CARPENTERS
ANNUITY, APPRENTICESHIP, LABOR-
MANAGEMENTS COOPERATION, PENSION
and WELFARE FUNDS,                                         Case No.:  2:13-CV-5760
                                                          (JS/SIL)
                                  Plaintiffs,

        -against-

CLAUDE RODRIGUE d/b/a MR DRYWALL, INC.,
C.R. DRYWALL CO. INC., and C.R. DRYWALL
RESIDENTIAL, INC.,
                                  Defendants.

---

## OBJECTIONS TO THE REPORT
## AND RECOMMENDATIONS OF THE MAGISTRATE
## JUDGE, DATED JANUARY 25, 2017

**TABNER, RYAN & KENIRY, LLP**
William F. Ryan, Jr., Esq.
*Attorneys for Defendants Claude Rodrigue*
   *and CR Drywall Residential, Inc.*
18 Corporate Woods Boulevard
Suite 8
Albany, NY  12211
(518) 512-5320
(518) 465-5112 (facsimile)
wrf@trklaw.com
Bar Roll No.: WR7051

**Table of Contents**

STATEMENT OF FACTS..........................................................................................1

ARGUMENT.......................................................................................................2

   I.     Applicable Legal Standards...................................................................2

   A.  Evaluating Reports and Recommendations of Magistrate Judges.........................2

   B.  Motion to Confirm an Arbitration Award ...............................................2

   C.  Motion for Summary Judgment.............................................................3

   II.    The Objections .................................................................................4

   1.  The Magistrate Judge Erroneously Purported to Grant Relief
       As Against C.R. Drywall Co., Inc. and C.R. Drywall Residential, Inc...................4

   2.  Adopting the Magistrate Judge's Report and Recommendations
       Would Deprive Mr. Rodrigue of Due Process ........................................5

   3.  The Magistrate Judge Erroneously Concluded That the Parties Agreed to
       Arbitrate Their Dispute and That the Record Establishes Conclusively that
       the Arbitrator Had Jurisdiction As a Matter of Law................................7

   4.  The Magistrate Judge Erroneously Interpreted the Collection Policy in a
       Matter that Was Not Supported by the Record and That Would Render
       the Agreement Illusory and Unenforceable.........................................10

   5.  The Magistrate Judge Erroneously Concluded that the Collections Policy Authorized
       the Arbitrator to Proceed with the Arbitration in Defendant(s)' Absence ...........12

   6.  The Magistrate Judge Erroneously Concluded that the Collection Policy Was
       Consistent with the Subject CBA .....................................................14

7.  The Magistrate Judge Erroneously Concluded that the No Material Issues of Fact Existed Regarding the Terms of the CBA and Whether the Parties Agreed On Them.....14

8.  The Magistrate Judge Ignored the Deficiencies with the Audit ............................17

9.  The Magistrate Judge Ignored the Deficiencies with the Arbitration Proceedings...18

10. The Magistrate Judge Erroneously Rejected Mr. Rodrigue's *De Facto* Corporation Defense.............................................................................19

11. The Magistrate Judge Erroneously Determined that the Defenses of Estoppel, Laches, and Waiver Were Unavailable as a Matter of Law .................23

12. The Magistrate Judge Ignored Case Law Holding that the Court Should Dismiss the ERISA Claims and Deny Plaintiffs' Request for Attorneys' Fees and Costs .24

CONCLUSION ................................................................................................25

# TABLE OF AUTHORITIES

## Federal Cases

*ACEquip Ltd. v. Am. Eng'g Corp.*
  315 F.3d 151 (2d Cir. 2003) ...........................................................3, 7

*Bassett v. Elec. Arts, Inc.*
  93 F. Supp. 3d 95 (E.D.N.Y. 2015) ...............................................10, 11

*Boys v. Monster Energy Co.*
  983 F. Supp. 2d 338 (S.D.N.Y. 2013) ..................................................4

*Carey v. 24 Hour Fitness, USA, Inc.*
  669 F.3d 202 (5th Cir. 2012) ............................................................10

*D.H. Blair & Co. v. Gottdiener*
  462 F.3d 95 (2d Cir. 2006) .................................................................3

*First Options of Chicago, Inc. v. Kaplan*
  514 U.S. 938 (1995) .......................................................................3, 7

*Follman v. World Fin. Network Nat'l Bank*
  721 F. Supp. 2d 158 (E.D.N.Y. 2010) ...............................................11

*Herrenknecht Corp. v. Best Rd. Boring No. 06 Civ. 5106 (JFK)*
  2007 U.S. Dist. LEXIS 28495, 2007 WL 1149122 (S.D.N.Y. Apr. 16, 2007) .................2

*L-TEC Elecs. Corp. v. Cougar Elec. Org. Inc.*
  198 F.3d 85 (2d Cir. 1999) ...........................................................20, 22

*Mullane v. Cent. Hanover Bank & Trust Co.*
  339 U.S. 306 (1950).........................................................................5

*Ottley v. Schwartzberg*
  819 F.2d 373 (2d Cir. 1987) .............................................................24

*Shaw Group, Inc. v. Triplefine Int'l Corp.*
  322 F.3d 115 (2d Cir. 2003) ............................................................3, 7

*Valle v. ATM Nat'l, LLC*
  2015 U.S. Dist. LEXIS 11788, 2015 WL 41344 (S.D.N.Y. Jan. 30, 2015) .................10

*Zamora v. Swift Transp. Corp.*
  319 Fed.Appx. 333 (5th Cir.2009).....................................................10

## State Cases

*Boslow Family Limited Partnership v. Glickenhaus & Co.*
    7 N.Y.3d 664 (2006) ..................................................................................23

*Garzo v. Maid of the Mist Steamboat Co.*
    303 N.Y. 516 (NY Ct. Appeals 1952) ...........................................................20

*Holm v. C.M.P. Sheet Metal, Inc.*
    89 A.D.2d 229 (4th Dep't 1982) ...................................................................23

*Kaisman v. Harnandez,*
    61 A.D.3d 565 (1st Dep't 2009) ...................................................................21

*Mich. Nat'l Bank-Oakland*
    89 N.Y.2d 94 (1996) ....................................................................................22

## Statutes and Rules

9 U.S.C. §2 .............................................................................................................3

9 U.S.C. §9 ..........................................................................................................2, 3

28 U.S.C. §636 ......................................................................................................2

Fed. R. Civ. P. Rule 56 .......................................................................................3, 4

Fed. R. Civ. P 72 ...................................................................................................2

In August 2016, Plaintiffs sought to confirm an arbitration award they had obtained against M.R. Drywall, Inc. in 2013 and to obtain partial summary judgment as against Defendant, Claude Rodrigue. (Docket Entry Nos. 58-64.)  In October 2016, this Court referred Plaintiffs' motion for partial summary judgment to the Magistrate Judge for a Report and Recommendation on whether it should be granted and, if necessary, to determine the appropriate amount of damages, costs and/or fees to be awarded. (Docket Entry No. 68.)  On January 25, 2017, the Magistrate Judge issued his Report and Recommendation. (Docket Entry No. 72.)

The Magistrate Judge recommended that Plaintiffs' motion be granted in its entirety, the arbitration award be confirmed, and Plaintiffs be awarded damages of $641,009.32. (Docket Entry No. 72.)  The Magistrate Judge further recommended that the Funds be granted leave to file a motion seeking recovery of attorneys' fees and costs as well as post-judgment interest. (Docket Entry No. 72.)

Pursuant to Federal Rules of Civil Procedure 72(b), Defendants, Claude Rodrigue (allegedly d/b/a M.R. Drywall, Inc.) and C.R. Drywall Residential, Inc. (referred to herein as one and/or all as Defendant(s)), object to the Magistrate Judge's Report and Recommendation.  As set forth below, the Magistrate Judge erred in recommending that the Court confirm the award and grant Plaintiffs' motion.  The Court should therefore decline to adopt the Report and Recommendation.  Instead, the Court should deny Plaintiffs' motion in its entirety.

## STATEMENT OF FACTS

The facts are set forth in Defendant(s)' opposition papers filed in response to Plaintiffs' motion (Docket Entry Nos. 58-64), including the affidavits and supplemental affidavits of Claude Rodrigue and Brian M. Quinn and Defendant(s)' Counterstatement of Material Facts and Memorandum of Law (Docket Entry No. 65).

## ARGUMENT

I.     **Applicable Legal Standards**

    A.     **Evaluating Reports and Recommendations of Magistrate Judges**

"[A] magistrate judge must … conduct … proceedings when assigned … to hear a pretrial matter dispositive of a claim or defense …." Fed. R. Civ. P. 72(b); *see also* 28 U.S.C. § 636. "The magistrate judge must enter a recommended disposition, including, if appropriate, proposed findings of fact." Fed. R. Civ. P. 72(b)(1). The parties may then object to the Report and Recommendation. Fed. R. Civ. P. 72(b)(2).

Upon the filing of objections, the Court "must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). The Court "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *Id.*

    B.     **Motion to Confirm an Arbitration Award**

Section 9 of the Federal Arbitration Act ("FAA") provides, in part, that "any party to the arbitration may apply to the court … for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title." 9 U.S.C. § 9. Where "there is no indication that the arbitration decision was made arbitrarily, exceeded the arbitrator's jurisdiction, or otherwise was contrary to law . . . a court must confirm the award upon the timely application of any party." *Herrenknecht Corp. v. Best Rd. Boring, No. 06 Civ. 5106 (JFK)*, 2007 U.S. Dist. LEXIS 28495, 2007 WL 1149122, at *2 (S.D.N.Y. Apr. 16, 2007).

Notwithstanding, the courts' authority to confirm an arbitration award exists only "[i]f the parties in their agreement have agreed that a judgment of the court shall be entered upon the

2

award made pursuant to the arbitration." 9 U.S.C. § 9.  A court therefore must have the consent of the parties in order to review and confirm an arbitration award. *See, e.g.,* 9 U.S.C. §§ 2, 9; *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995) ("arbitration is simply a matter of contract between the parties; it is a way to resolve those disputes -- but only those disputes -- that the parties have agreed to submit to arbitration"); *Shaw Group, Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 120 (2d Cir. 2003) ("the role of courts is … to determin[e] … whether a valid agreement … to arbitrate exists…."; "parties cannot be compelled to arbitrate….").

The question of arbitrability (*e.g.*, whether the parties agreed to arbitrate in the first place) generally presents an issue for the court to decide rather than the arbitrator. *See, e.g., First Options of Chicago, Inc.*, 514 U.S. at 943; *Shaw Group, Inc.*, 322 F.3d at 121; *ACEquip Ltd. v. Am. Eng'g Corp.*, 315 F.3d 151, 155-156 (2d Cir. 2003).  In fact, the courts should defer to the arbitrator on this issue only "when parties evince a clear and unmistakable agreement to arbitrate arbitrability." *Shaw Group, Inc.*, 322 F.3d at 121 (internal quotation marks and citation omitted).

Further, a petition to confirm an arbitration award "should [be] treated as akin to a motion for summary judgment …" and "even where a non-moving party fails to  respond to a motion for summary judgment, a court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 109-10 (2d Cir. 2006) (internal quotation marks and citations omitted).

## C.    Motion for Summary Judgment

To prevail under Rule 56, the movant must "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "The movant bears the burden of demonstrating the absence of a question of material

fact." *Boys v. Monster Energy Co.*, 983 F. Supp. 2d 338, 347 (S.D.N.Y. 2013).  The Court views the facts "'in the light most favorable'" to the non-moving party. *Id.* (citation omitted).

"To survive a summary judgment motion, the opposing party must establish a genuine issue of fact by 'citing to particular parts of materials in the record.'" *Id.* at 347, citing Fed. R. Civ. P. 56(c)(1).  However, "[o]nly disputes over 'facts that might affect the outcome of the suit under the governing law' will preclude a grant of summary judgment." *Id.* (citation omitted).

## II.    The Objections

### 1.   The Magistrate Judge Erroneously Purported to Grant Relief As Against C.R. Drywall Co., Inc. and C.R. Drywall Residential, Inc.

In his Report and Recommendation, the Magistrate Judge collectively referred to all of the defendants as "Defendant" or "Rodrigue", including C.R. Drywall Residential, Inc. and C.R. Drywall Co., Inc. (Docket Entry No. 72, at page 1.)  The Magistrate Judge then compounded this error by proceeding to make various findings against "Defendant" and/or "Rodrigue" in an extremely vague and ambiguous manner, without specifying the specific defendant(s) to whom he was referring, such as his recommendation that "Defendant be held personally liable for all of the damages…." (Docket Entry No. 72, at page 24.)

The Court should reject any findings and recommendations by the Magistrate Judge against C.R. Drywall Residential, Inc. and C.R. Drywall Co., Inc.  The complaint does not seek to confirm any award against them.  (Docket Entry No. 1.)  Plaintiffs' notice of motion (as well as their motion papers) also did not seek to confirm the award against C.R. Drywall Residential, Inc. and C.R. Drywall Co., Inc. or to obtain summary judgment against them. (Docket Entry Nos. 58-64.)

Indeed, Plaintiffs' notice of motion specifies that relief was being sought against only Claude Rodrigue and further fails to identify any other defendants as targets of the motion.

(Docket Entry No. 58.)  The moving papers (including the Rule 56.1 Statement) further did not expressly address or seek any relief against C.R. Drywall Residential, Inc. or C.R. Drywall Co., Inc. (represented by separate counsel in this action) or provide a sufficient record to establish their liability as a matter of law.  (Docket Entry Nos. 58-64.)

Further, as with Plaintiffs' submission, the Magistrate Judge also failed to provide any basis to grant relief against C.R. Drywall Residential, Inc. and C.R. Drywall Co., Inc. (Docket Entry No. 72.)  Rather, the alleged basis for the findings and recommendations focus on Claude Rodrigue and do not address the basis for any liability of C.R. Drywall Residential, Inc. and C.R. Drywall Co., Inc.  (Docket Entry No. 72.)  As such, no relief should be awarded against C.R. Drywall Residential, Inc. or C.R. Drywall Co., Inc.

## 2. Adopting the Magistrate Judge's Report and Recommendations Would Deprive Mr. Rodrigue of Due Process

The Court should reject the Magistrate Judge's recommendation to hold Mr. Rodrigue personally liable for the damages.  Indeed, adopting such a recommendation would deprive Mr. Rodrigue of a full and fair opportunity to litigate this matter.

"An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314-15 (1950).  "The notice must be of such nature as reasonably to convey the required information, and it must afford a reasonable time for those interested to make their appearance." *Id.*

As the record reveals, the notice of arbitration was served on a non-existent entity (according to the Magistrate Judge) rather than Mr. Rodrigue. (*See, e.g.,* Craven Supp. Dec., Ex. B.)  It was addressed solely to MR Drywall, Inc., and instructed that in the event of default, an

award would be issued against only MR Drywall, Inc.  It did not inform any of the other defendants that Plaintiffs would also be seeking to bind them to the arbitration findings or hold them personally liable for the award.  In fact, Plaintiffs consciously failed to provide them with any notice of those proceedings.  The notice of arbitration itself was served by mail and addressed to only MR Drywall, Inc.  In addition, the notice of intent to arbitrate was served at a time when MR Drywall was apparently no longer operating, thereby removing any incentive for it to appear and defend. (Craven Dec., Ex. G; Quinn Aff., Ex. C, at 73).

These deficiencies, moreover, amounted to a constitutional violation that the courts rather than the arbitrator should decide.  Indeed, Plaintiffs are seeking to obtain a judgment against Mr. Rodrigue for hundreds of thousands of dollars based on service by mail.  Unlike in the cases relied upon by the Magistrate Judge, the notice was not even addressed to Mr. Rodrigue.  There is also no evidence that Mr. Rodrigue signed the return receipt "Rodrigue" (as opposed to a different Rodrigue – see remittance reports signed by Andre Rodrigue) or even opened the envelope.

Plaintiffs also did not provide a follow up telephone call or even an email to notify Mr. Rodrigue of the alleged hearing. (Quinn Dec., Ex. C., at page 132-133.)  Plaintiffs also did not indicate in the written notice that his failure to appear would result in his personal liability as opposed to an award solely against the defunct MR Drywall.

The affidavit of service and summons in this action also indicate that Plaintiffs had an alternative address available for Mr. Rodrigue, but failed to utilize it. (Compare Craven Supp. Dec., Ex. B, with Docket Nos. 3 & 7).  Indeed, the summons lists a different address as the address to which the notice was mailed.  Further, given the amount of personal liability at issue (namely, hundreds of thousands of dollars), due process required at a minimum for Plaintiffs to

at least attempt to mail a copy of the notice to the additional address, namely, Mr. Rodrigue's residence, as set forth in the summons. This would have imposed a minimal burden on Plaintiffs (specifically, the cost of a postage stamp).

In contrast, Mr. Rodrigue now stands to be personally liable for hundreds of thousands of dollars based on a record that does not conclusively establish that he received sufficient notice (or even any notice) of the arbitration proceeding.

Plaintiffs also held the arbitration outside of Defendant(s)' county of residence and did not provide him with the option to appear by telephone or other accessible means. These likewise contributed to the violation of Mr. Rodrigue's constitutional rights.

### 3. The Magistrate Judge Erroneously Concluded That the Parties Agreed to Arbitrate Their Dispute and That the Record Establishes Conclusively that the Arbitrator Had Jurisdiction As a Matter of Law

The Magistrate Judge erroneously concluded that the parties agreed to arbitrate their dispute and that the Court therefore had authority to confirm the arbitration award. Similarly, the Magistrate Judge erroneously held that the arbitration award "drew its essence from the collective bargaining agreement." (Docket Entry No. 72, at 8-16.). At a minimum, material issues of fact exist whether Defendant(s) consented to arbitration and/or agreed to be bound by the subject arbitration provision. Moreover, as explained above, these issues are for the court rather than the arbitrator to decide. *See, e.g., First Options of Chicago, Inc.*, 514 U.S. at 943; *Shaw Group, Inc.*, 322 F.3d at 121; *ACEquip Ltd. v. Am. Eng'g Corp.*, 315 F.3d at 155-156.

Here, Plaintiffs asserted, and the Magistrate Judge erroneously determined, that the right to arbitrate was based on Article 2.2 of the Collection Policy. (Craven Dec., ¶12; Ex. F).[1] However, there is no evidence that the Collection Policy was signed or agreed upon by

---

[1] Neither Plaintiffs nor the Magistrate Judge cited any arbitration provision in the alleged Collective Bargaining Agreement. Instead, they concluded that the only arbitration provision was set forth in the Collection Policy.

Defendant(s). There is no evidence that they were even provided a copy of it at any time in the past, or notified of its terms. There is also no evidence that the Collection Policies relied upon by Plaintiffs, dated March 2012 and March 2013, were in existence prior to the period of the Collective Bargaining Agreement ("CBA") relied upon by Plaintiffs (namely, the one allegedly effective from 2006 to 2011) or the arbitration award (dated February 2013), respectively. (Craven Dec., Ex. F, at 10; Craven Supp. Dec., Ex. A.)

Indeed, Plaintiffs simply failed to provide the Court with a copy of any Collection Policy from 2006 to 2011 or any agreement applicable to 2006 to 2011, requiring subject arbitration. The Magistrate Judge then merely speculated that the March 2012 Collection Policy applied retroactively to the parties' dispute which arose prior to this time. The Magistrate Judge further speculated that the CBA (allegedly effective from 2006 to 2011) carried into 2012 because the agreements did not expire, but instead were extended past their expiration dates because neither party to the agreement issued an explicit notice of modification. (Docket Entry No. 72, at 14-15 (citing Craven Decl., Ex. E, Article 41.)

There is no basis in the record for these findings. Plaintiffs did not discuss these provisions in any detail or provide any facts to support these conclusions reached by the Magistrate Judge. Defendant(s) also disputed the applicability of the Collection Policy and discussed its non-application in supporting affidavits. See Rodrigue Affidavit (Paragraphs 3-8) and Supplemental Affidavit (Paragraphs 7-13.)

There is no record evidence that the parties elected to continue with the CBA. It is pure speculation to assume that parties continued on with the agreement, especially as Plaintiffs have not specified whether or not a new agreement or Memorandum of Understanding ("MOU") was executed for 2012 and, if so, whether or not Defendant(s)' executed it.

8

Further, if Plaintiffs entered into a new CBA or MOU for 2012 and Defendant(s) did not sign it or continue any relationship with Plaintiffs, the provision relied upon by the Magistrate Judge would not apply.  Indeed, a new 2012 CBA agreement would itself constitute the requisite modification referenced in the provision cited by the Magistrate Judge, namely, Article 41 of the 2006-2011 CBA.  To hold otherwise, would subject the parties to multiple agreements and run contrary to the concept of collective bargaining.  There is also no evidence of the intent of this provision (namely, Article 41) or any other evidence submitted to demonstrate its applicability in this case.  Again, the record is devoid of how, if at all, the parties' relationship continued after 2011.  In fact, Mr. Rodrigue testified that MR Drywall went out of business (Quinn Aff, Ex. C, at page 73).  The remittance reports submitted by Plaintiffs are also from earlier years, prior to 2012.  (Tompuri Aff, Ex. A.)

As such, there is no basis upon which to grant the relief requested by Plaintiffs, as their entire argument centers on the validity of an agreement/provision allegedly in a Collection Policy from 2006 to 2011 that they never even provided to the Court.  Plaintiffs therefore have not established as a matter of law that the Collection Policy was binding on MR Drywall or Mr. Rodrigue or any other defendant for that matter.

Further, the only basis upon which Plaintiffs and the Magistrate Judge asserted the Collection Policy applied stems from a misquoted sentence in the CBA.  Specifically, they asserted that the CBA provides that they agreed to be bound by the "agreements" and "policies" of the funds. (SOMF ¶7; Craven Dec. Ex. E).  As explained below, the CBA relied upon by Plaintiffs and the Magistrate Judge containing this language is not even signed.  (Craven Dec., Ex. E).  The Collection Policies in the record are also dated after the applicable time period for the subject CBA. (Craven Dec., Ex. F).

However, even ignoring these fatal defects, that CBA does not define "agreements" or "policies" or clearly state that this provision applied prospectively.  As such, there is an issue of fact regarding whether the parties intended this provision to include the Collection Policy, including the versions of the collection policies relied upon by Plaintiffs that were not even in existence at the time.

**4. The Magistrate Judge Erroneously Interpreted the Collection Policy in a Matter that Was Not Supported by the Record and That Would Render the Agreement Illusory and Unenforceable**

The Magistrate Judge also erroneously interpreted the Collection Policy in a manner that was not supported by the record and that would render the agreement illusory and unenforceable. Specifically, the Magistrate Judge effectively determined that Plaintiffs had the unilateral right to create and eliminate an arbitration provision in its sole discretion without having to provide any notice to Defendant(s).  This logic is contrary to well-settled law and should not be adopted by this Court.  The record is also undeveloped in terms of what procedures, if any, Plaintiffs followed in unilaterally amending the CBA by including the arbitration and attorneys' fee provisions and whether those procedures complied with the CBA and the case law regarding unilateral changes to an agreement.

It is well-settled that the power to unilaterally amend contractual provisions may give rise to an illusory contract. *See, e.g., Carey v. 24 Hour Fitness, USA, Inc.*, 669 F.3d 202, 206 (5th Cir. 2012); *Zamora v. Swift Transp. Corp.*, 319 Fed.Appx. 333, 334 (5th Cir.2009) (affirming district court's holding that an arbitration agreement was illusory because the employer "reserved the right to revoke or modify the agreements at any time without notice"); *Bassett v. Elec. Arts, Inc.*, 93 F. Supp. 3d 95, 106-107 (E.D.N.Y. 2015); *Valle v. ATM Nat'l, LLC*, 2015 U.S. Dist. LEXIS 11788, 2015 WL 41344 (S.D.N.Y. Jan. 30, 2015) ("changes in terms valid where

evidence existed that amending party provided the other party notice and an opportunity to opt-out—procedural terms that were expressly provided in the Amendment Provision and were followed"); *Follman v. World Fin. Network Nat'l Bank*, 721 F. Supp. 2d 158, 166 (E.D.N.Y. 2010) (applying Ohio law: "Because the arbitration provision falls outside the scope of the universe of terms contemplated by the original amendment, the change-of-terms provision did not authorize defendant to add it."). Further, "the analysis of whether a unilateral right to modify … [an] agreement renders that agreement illusory and unenforceable turns on reasonableness and fair notice." *Bassett*, 93 F. Supp. 3d at 107.

Here, the Magistrate Judge ignored the fact that Plaintiffs unilaterally included the arbitration provision in the Collection Policy and, in effect, changed the terms of the alleged CBA without the Defendants' consent. Rather, the Magistrate Judge erroneously assumed that Plaintiffs had the unrestrained discretion to create any Collection Policy they desired, regardless of whether or not the terms changed the CBA. There is no analysis, nor any evidence submitted by Plaintiffs, regarding the reasonableness of Plaintiffs' unilateral adoption of an arbitration provision. Moreover, considering that arbitration is a material term of a bargain, the unilateral inclusion of such a provision is *per se* unreasonable absent evidence to the contrary. Further, the Magistrate Judge likewise did not discuss or identify any notice provided to Defendant(s) in connection with the inclusion of the arbitration provision or whether Defendants were provided any ability to opt out of the new agreement.

In fact, Plaintiffs failed to submit any evidence on these issues, namely, the reasonableness of the change to the CBA (by the inclusion of the arbitration provision) and the procedures followed, including the notice provided. As such, Plaintiffs failed to meet their

burden of proving that the arbitration provision was enforceable and that Defendant(s) consented to arbitration. At a minimum, material issues of fact exist on this issue.

Moreover, the Magistrate Judge erroneously concluded that the "Employer Trustee" signing the 2012 Collection Policy had the authority to bind Defendant(s). Again, as explained above, this 2012 Collections Policy has no application to the terms of the 2006-2011 CBA, especially as that CBA purportedly expired in 2011 and the union may have entered into a new agreement to which Defendant(s) were not a party.

In any event, the record does not support a finding that the provision relied upon by the Magistrate Judge (Craven Dec., Ex. E, Article 3) is even applicable (Docket Entry No. 72, at 13-14). Indeed, even assuming the Defendant(s) signed the 2006-2011 CBA, it merely purports to bind employers to the terms of the CBA. While it permits modifications, it does not dispense with the basic requirements that employers agree upon the terms, be provided with notice of any changes, and/or be provided with the opportunity to opt out of any material modifications such as the inclusion of arbitration provisions.

5. **The Magistrate Judge Erroneously Concluded that the Collections Policy Authorized the Arbitrator to Proceed with the Arbitration in Defendant(s)' Absence**

Further, the Magistrate Judge erroneously concluded that the Collection Policy authorized the Arbitrator to proceed with the arbitration in Defendant(s)' absence (Docket Entry No. 72, at page 16-17). The Collection Policy does not contain any agreement to arbitrate or provide any authority for the arbitrator to enter a default award based on an employer's non-appearance. (Craven Dec., Ex. F, Article 2.2.) In fact, the Collection Policy requires Plaintiffs to stop arbitration and commence an action in federal court, pursuant to Article 3 of the Collection Policy, upon any objection of an employer to arbitration. (Craven Dec., Ex. F, Article 2.2).

Indeed, Article 2.B of the Collection Policy expressly provides that if "an employer objects to the arbitration … by means other than commencement of an action to stay arbitration, the matter shall be pursued … in Federal Court." (Craven Dec., Ex. F, Article 2.2(B)).  Similarly, Article 3 further provides that "[i]f the employer does not agree to arbitration" Plaintiffs "shall initiate legal action in Federal Court."  (Craven Dec., Ex. F, Article 3.1).

Here, the failure of MR Drywall to appear or participate in the arbitration was a clear objection that precluded Plaintiffs from obtaining any default judgment in any arbitration proceedings.  To assume that MR Drywall and Mr. Rodrigue did not appear because they were consenting to the $640,000 award defies logic.  Moreover, the arbitrator did not even inquire about the reason for MR Drywall's whereabouts or its failure to appear.  Rather, the arbitrator merely assumed that he had the authority to enter an award based on an employer's non-appearance, regardless of the reason.

Moreover, the alleged notice indicated that the arbitration was against MR Drywall, Inc. and that any default would be against it (a defunct entity).  The notice did not indicate that Plaintiffs would seek to hold Mr. Rodrigue personally liable for hundreds of thousands of dollars. (*See, e.g.*, Craven Supp. Dec., Ex. B ("In the event of your failure to appear, the hearing will go forward, resulting in issuance of a default Award against your Company.").

6. **The Magistrate Judge Erroneously Concluded that the Collection Policy Was Consistent with the Subject CBA**

Further, even if the CBA authorized Plaintiffs to create a Collection Policy, it limited Plaintiffs from creating agreements and policies inconsistent or in conflict with the subject CBA. (Craven Dec., Ex. E Art. 17, §3.)  As is the case here, Plaintiffs and the Magistrate Judge failed to identify any arbitration, choice of forum, or attorneys' fees provision in the CBA.  As such, the inclusion of these terms in a subsequently and unilaterally created Collection Policy would in fact materially alter the terms of the parties' initial (alleged) bargain and should therefore be considered as inconsistent and in conflict with the initial bargain.  Indeed, if Plaintiffs wanted these provisions included in their bargain, they should have included them in the collective bargaining agreement.

The Magistrate Judge erred by not addressing this issue and finding it conclusory (Docket Entry No. 72, at page 12).  The Court should find that the inclusion of terms to the Collection Policy that are material changes to the initial bargain in the alleged CBA (such as the inclusion of an arbitration clause) are not consistent with the CBA and, as such, are unenforceable.  At a minimum, the Court should find that issues of material fact exit on this issue.

7. **The Magistrate Judge Erroneously Concluded that the No Material Issues of Fact Existed Regarding the Terms of the CBA and Whether the Parties Agreed On Them**

Contrary to the Magistrate Judge's findings, there are also disputed issues regarding what the parties agreed upon regarding the terms of the CBA.  As is evidenced from the record, the CBA relied upon by Plaintiffs and the Magistrate Judge is not even signed. (Craven Dec., Ex. E).

In this regard, the arbitrator relied upon some unidentified "proof" to determine that "[t]he Employer is a signatory to the Agreement with the Union".  (Craven Dec., Ex. H).  Despite repeated demands, however, Plaintiffs were unable to produce the alleged signature page

from the applicable CBA or any other "proof" allegedly relied upon by the arbitrator. (Quinn Supp. Affidavit). Even on its motion, Plaintiffs took the brazen step of submitting an unsigned copy of the CBA upon which it relies. This underscores the arbitrary nature of the arbitration at issue in this case: there was no evidence to support this finding and it is based on a false statement by the arbitrator.

Moreover, Plaintiffs attempted to rectify their deficient submission by selectively misquoting Mr. Rodrigue's deposition testimony. During the deposition, Plaintiffs' counsel purported to show Mr. Rodrigue a copy of the subject CBA. (Quinn Affidavit, Ex. C, at 69-70). Mr. Rodrigue's counsel objected, as the document had likely not been previously produced in response to Plaintiffs' discovery demand. Of course, the document had not been provided because it did not contain any signature page and counsel did not want to afford Mr. Rodrigue the opportunity to review it beforehand or discuss it with his counsel.

What transpired at that point was outlandish. When Plaintiffs' counsel asked if Mr. Rodrigue had an opportunity to review the document, Mr. Rodrigue responded, "No". *(Id.).* Counsel then proceeded to ask questions quickly to prevent Mr. Rodrigue from finishing his review of the lengthy document. *(Id.).* Mr. Rodrigue responded that he "guess[ed]" that the document was a "bargaining type of contract" and that he thought he signed it for MR Drywall but that he never saw it again. *(Id.,* at 70).

These generalized statements were not sufficient to grant summary judgment. Indeed, Mr. Rodrigue was merely guessing that the agreement applied in light of counsel providing him a copy of it. He merely assumed it had a signature page based on his limited review of the document and Plaintiff's counsel's failure to disclose it prior to the deposition. As Mr. Rodrigue never saw the document again (assuming he ever saw it even once before), he was clearly not

15

agreeing that the terms in the document were the same as what was allegedly signed.  Moreover, as Plaintiffs' counsel did not have any actual signed document, it would have been impossible for Mr. Rodrigue to confirm the validity of the document, especially after a period of not seeing it for years.  At best, Mr. Rodrigue thought the document looked familiar and assumed he had seen it at least once before.  However, neither party can say with any degree of confidence whether or not they signed it and whether or not the specific draft referenced by Plaintiffs contains the same terms as the document allegedly signed 10 years ago.

Further, the document purportedly signed by MR Drywall is a Memorandum of Agreement, dated May 31, 2006 ("2006 MOU"), which purports to cover the time period of 2006-2011. (Craven Dec., Ex. D.)  To support their position, Plaintiffs and the Magistrate Judge did not purport to cite any of the terms from the 2006 MOA or any of the terms from the 2002 to 2006 agreement referenced therein, notwithstanding the fact that this document is signed.  They also failed to explain why MR Drywall would sign two collective bargaining agreements for overlapping time periods.

In addition, as explained above, Plaintiffs and the Magistrate Judge relied upon the enforceability of the unsigned collective bargaining agreement to enforce the arbitration provision from the Collection Policy.  Given the disputed fact over the validity of the subject CBA, Plaintiffs have not established that the Collection Policy (or its arbitration provision) applied to MR Drywall or Mr. Rodrigue and this in turn precludes them from relying on the arbitration provision.

The Magistrate Judge also speculated that Defendant(s) consented to the arbitration clause by making benefit contributions and submitting to the audit. (Docket Entry No. 72, at page 15.)  Again, there is no evidence that Defendant(s) made any such contributions after the

16

CBA expired in 2011 and, even if they did, there is no evidence of the extent of any such contributions or compliance and whether or not it was in accordance with any CBA or Collection Policy.  In this regard, Plaintiffs and the Magistrate Judge merely assumed the parties engaged in conduct evidencing consent to the arbitration clause, without citing any support for this assertion. Again, the record is devoid of any evidence on these issues that would permit an award of summary judgment in favor of Plaintiffs.

## 8.  The Magistrate Judge Ignored the Deficiencies with the Audit

The Magistrate Judge also relied upon an audit that Plaintiffs did not discuss or cite in their motion papers.  In fact, Plaintiffs sought a judgment for more than $640,000 without even identifying the document upon which they base their calculations.  The arbitrator, moreover, referred to the audit as having been made by an "independent auditor" and did not even question the accuracy of it based on an attachment to the arbitration award, yet Plaintiffs failed to provide the attachment.  The arbitrator (and Plaintiffs) did not even specify the name of the auditor.

In any event, the purported audit appears to be unverified and unsigned. (Dickerson Dec., Document 61-4, page 123-132).  It appears to consist of an unexplained spreadsheet that appears to include amounts due from CR Drywall.  Plaintiffs and the Magistrate Judge failed to explain the reliability of the audit and whether or not any amounts owed by CR Drywall were also included in the audit.  They also failed to explain whether or not the audit included non-union and non-covered work in the calculations.  Plaintiffs also did not provide any proof in terms of what transpired at the purported arbitration hearing and what proof the arbitrator relied upon.  At the very least, Plaintiffs should be required to file a certified record of the proceedings to determine whether or not any evidence supports them, especially as Plaintiffs are in the exclusive possession of such information and have not shared it accordingly.

17

Plaintiffs' failure to disclose the alleged audit to the court and any details surrounding its creation evidence their strategy in this case – to try to avoid reaching the merits of these issues and by hiding behind generalizations about lengthy documents and relying on a person with no personal knowledge of the parties' relationship.

Moreover, Defendant(s)' alleged failure to appear at the hearing did not constitute a waiver of this issue. Rather, as explained above, Plaintiffs still had the burden to demonstrate the propriety of the award. Mr. Rodrigue was also not even named as a party.

9. **The Magistrate Judge Ignored the Deficiencies with the Arbitration Proceedings**

The Magistrate Judge also erroneously ignored the deficiencies with the arbitration proceedings. Among other things, Plaintiffs did not provide a copy of the arbitration transcript or any of the affidavits of service. (Quinn Supp. Affidavit). Plaintiffs, moreover, failed to name Mr. Rodrigue as a party to that proceeding, despite the Magistrate Judge's reasoning that MR Drywall is a "fictitious" entity. (Quinn Affidavit, Ex. D). Indeed, if MR Drywall were not treated as a corporation, the arbitration proceeding against MR Drywall would be a nullity based on Plaintiffs' failure to name and serve the proper party. In fact, under the Magistrate Judge's logic, there would have been no defendant in the arbitration if MR Drywall were fictitious and, as such, there would have been no party against which the Plaintiffs could confirm the award.

Moreover, Plaintiffs did not provide any evidence that Mr. Rodrigue was sufficiently served or had sufficient notice of the proceedings. (Quinn Dec., Ex. C, at pages 132-133.) In fact, Plaintiffs have not even alleged that the arbitrator had any rules for the service of individuals or procedures for defaults. Plaintiffs also failed to provide Mr. Rodrigue with any notice that they intended to obtain an award against him by commencing arbitration against MR Drywall as the named defendant, and then subsequently seeking to obtain judgment against Mr.

18

Rodrigue directly. As explained above, the notice of intent to arbitration itself expressly limited relief to a default against only the company (not the owner).

Moreover, the arbitration occurred with a New Jersey attorney unilaterally selected by Plaintiffs. (Craven Dec., Ex. G-H). The arbitrator does not even appear to possess a New York license to practice law. He is apparently used by Plaintiffs for these matters on a "permanent" basis. (Craven Dec., Ex. G-H). In addition, the alleged notice was by way of mail rather than personal delivery, and there has been no showing of any compliance with any arbitration rules. The arbitration was also conducted at Plaintiffs' Long Island office outside of MR Drywall and Mr. Rodrigue's county of residence. (Craven Dec., Ex. G-H).

The conflict of the arbitrator is evident through a basic search of a legal database such as LexisNexis for New York federal cases referencing the name of the arbitrator, namely, "J.J. Pierson". This results in approximately 50 cases regarding similar arbitrations and awards against employers and in favor of similar Plaintiffs. In fact, the search results do not include additional cases where the arbitrator was not identified by name in the decisions.

Accordingly, the Court should reject the Report and Recommendation.

## 10. The Magistrate Judge Erroneously Rejected Mr. Rodrigue's *De Facto* Corporation Defense

Plaintiffs asserted, and the Magistrate Judge erroneously determined, that Mr. Rodrigue should be held personally liable for any judgment against MR Drywall because he was doing business as MR Drywall. In response, Mr. Rodrigue asserted that MR Drywall was a *de facto* corporation and that he cannot be held personally liable for its debts or obligations. Plaintiffs did not address any of Mr. Rodrigue's additional statements of material facts, nor did they even respond to the affidavit and supplemental affidavit submitted by Mr. Rodrigue on this issue.

19

"Where . . . a corporation carries on its affairs and exercises corporate powers as before, it is a *de facto* corporation . . . and ordinarily no one but the state may question its corporate existence." *Garzo v. Maid of the Mist Steamboat Co.*, 303 N.Y. 516, 524 (NY Ct. Appeals 1952) (internal quotation marks omitted); *L-TEC Elecs. Corp. v. Cougar Elec. Org. Inc.*, 198 F.3d 85, 87 (2d Cir. 1999) ("[i]t is well established in New York that a company lacking formal corporate status but nonetheless operating as a corporation may be considered a *de facto* corporation and those who treat the entity as a corporation in regular business dealings may not later deny its corporate status."). Indeed, "a person who deals with a *de facto* corporation cannot later deny its existence and proceed against its officers personally." *L-TEC Elecs. Corp., 198 F.3d at 87* (citations omitted).

Here, contrary to the Magistrate Judge's conclusion, the doctrine of *de facto* corporation applies (Docket Entry No. 72, at page 19-24). New York State has laws under which the corporation might be organized; (2) there was an attempt to organize the corporation and, in fact, the subject corporation that allegedly signed the subject CBA (namely, MR Drywall Distributors, Inc.) was incorporated; and (3) the subject corporation exercised its corporate powers thereafter.[2]

As to the third prong, MR Drywall has allegedly signed the relevant CBA and MOUs, paid employees, conducted business, made employer contributions to benefit plans for years, and been sued individually as a defendant in various lawsuits, among other things. In fact, Plaintiffs and others have previously sued MR Drywall as an employer under ERISA, and have obtained relief from the courts directly against MR Drywall in its various forms, including against MR Drywall, Inc. (Quinn Affidavit, Ex. A, B). Specifically, Plaintiffs previously sued "MR Drywall

---

[2] Plaintiffs fail to identify what entity signed the applicable collective bargaining agreement, although "MR Drywall" and "MR Drywall, Inc." appear to be abbreviations for "MR Drywall Distributors, Inc."

Services, LLC", which according to them was a/k/a "MR Drywall, Inc." ("Prior Lawsuit"). (Quinn Affidavit, Ex. A).

In the Prior Lawsuit, Plaintiffs served the summons and complaint on MR Drywall, Inc. and listed 11 Drywall Lane, Voorheesville, New York as the business address for "MR Drywall Services, LLC." (See Quinn Affidavit, Ex. A). In the Prior Lawsuit, Plaintiffs obtained a default against "MR Drywall, Inc." and a subsequent default judgment against "MR Drywall Services, LLC". Plaintiffs' attorneys in that action treated these entities as the same and, in its notice of motion for the default judgment, sought the default judgment against "MR Drywall, Inc." (Quinn Affidavit, Ex. A).

Further, in the Prior Lawsuit, Plaintiffs alleged, and the court accepted as true, allegations that MR Drywall was a corporation. (Quinn Affidavit, Ex. A). In connection with this lawsuit, Plaintiffs also allegedly commenced arbitration directly against "MR Drywall, Inc." and admittedly failed to name Mr. Rodrigue (its alleged owner) as a party to that proceeding. (Quinn Affidavit, Ex. D). Plaintiffs also did not object to MR Drywall signing any documents in its own name and continued to treat MR Drywall as a *de facto* corporation up until this lawsuit. (Quinn Affidavit, Exhibit C; *see also* Plaintiffs' declarations and exhibits).

Further, in the prior proceedings, the Plaintiffs alleged, and the court accepted as true, allegations that MR Drywall was a corporation. These constitute informal judicial admissions, which, at the very least, should preclude any grant of summary judgment in favor of the Plaintiffs. *See Kaisman v. Hernandez*, 61 A.D.3d 565, 566 (1st Dep't 2009).[3]

Perhaps most damaging to Plaintiffs' case is the fact that they commenced arbitration directly against "MR Drywall, Inc." and failed to name its alleged owner as a party to that

---

[3] Moreover, in this action, the plaintiffs have alleged that "Terry Bailey owns and manages MR Drywall." This official judicial admission creates additional confusion that precludes summary judgment.

proceeding.  This is conclusive evidence that the plaintiffs have treated MR Drywall as a *de facto* corporation and, as such, they cannot now "deny its existence and proceed against its officers [or alleged owner] personally." *L-TEC Elecs. Corp.*, 198 F.3d at 87.

In addition, the doctrine of *de facto* corporation concerns factual aspects and are not just legal admissions.  As explained above, these repeated acknowledgements of the entity justify treating the entity like a corporation, especially as no evidence exists that Plaintiffs were relying on Mr. Rodrigue's personal guarantee to do business with them.  In addition, contrary to the Magistrate Judge's assertions, the allegations in the prior pleadings by Plaintiffs and others regarding MR Drywall constitute informal judicial admissions and constitute "evidence of the fact or facts admitted." *See, e.g., Mich. Nat'l Bank-Oakland*, 89 N.Y.2d 94, 103 (1996).

The Magistrate Judge erroneously applied the *de facto* corporation doctrine too narrowly by precluding its application based on the alleged lack of evidence regarding whether or not Mr. Rodrigue attempted to officially change MR Drywall's official status back to active.  However, as explained above, the doctrine should nevertheless apply, as Plaintiffs dealt with MR Drywall as if it were a corporation should not be able to now "deny its existence and proceed against its officers personally." L-TEC Elecs. Corp., 198 F.3d at 87 (citations omitted).

Further, unlike the cases relied upon by the Magistrate Judge, Plaintiffs explicitly commenced arbitration against the subject entity and now seek to obtain a judgment in this proceeding based on those proceedings.  In addition, it is common practice for parties to investigate the status of entities prior to commencing actions.  The internet has also made this extremely easy for contracting parties.

No evidence exists that Plaintiffs did not investigate and learn about MR Drywall's corporate status prior to this litigation, including at the time of the alleged CBAs, Collection

22

Policies and the arbitration proceedings.  The Magistrate Judge's findings – that Defendant(s) mislead Plaintiffs or that Plaintiffs did not know about MR Drywall's corporate status – are not supported by the record.  Again, Plaintiffs failed make any of these allegations or to even respond to Defendant(s)' additional statements of fact on this issue.

### 11. The Magistrate Judge Erroneously Determined that the Defenses of Estoppel, Laches, and Waiver Were Unavailable as a Matter of Law

The Magistrate Judge also erroneously determined that the defenses of estoppel, laches and waiver were unavailable as a matter of law.  "[I]f neither of the parties [to a suit] is aware that corporate status has not been achieved, then corporation by estoppel may apply." *Boslow Family Limited Partnership v. Glickenhaus & Co.*, 7 N.Y.3d 664, 668 (2006).   Similarly, the doctrine of equitable estoppel "precludes a party at law and in equity from denying or asserting the contrary of any material fact which he has induced another to believe and to act on in a particular manner." *Holm v. C.M.P. Sheet Metal, Inc.*, 89 A.D.2d 229, 234 (4th Dep't 1982).  Under New York law, the application of equitable estoppel "requires three elements on the part of the party estopped: (1) conduct which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) intent that such conduct (representation) will be acted upon; and (3) knowledge, actual or constructive, of the true facts . . . The elements pertaining to the party asserting estoppel are (1) lack of knowledge of the true facts; (2) good faith reliance; and (3) a change of position . . . These are commonly termed the elements of detrimental reliance." *Id.*, at 234-35.

Here, as explained above, the parties treated MR Drywall as a legally independent entity. Plaintiffs in fact commenced the underlying arbitration proceeding against MR Drywall in its individual name.  Plaintiffs did not name Mr. Rodrigue as a party to any arbitration proceedings. Prior to this lawsuit, Mr. Rodrigue had no reason to believe that Plaintiffs would attempt to hold

him personally liable for any of the alleged debts of MR Drywall. This was based upon their prior history.

Based on Plaintiffs' conscious decision not to name Mr. Rodrigue as a party to any arbitration proceedings, he reasonably believed that Plaintiffs considered their dispute solely with MR Drywall. (Rodrigue Aff., paragraph 7.) Had he been informed otherwise, Mr. Rodrigue would have obtained legal representation for himself to dispute any such debt. Mr. Rodrigue therefore relied upon Plaintiffs' actions and should not be precluded from challenging the merits of the alleged debt.

Moreover, as explained above, the Magistrate Judge's findings – that Defendant(s) mislead Plaintiffs or that Plaintiffs did not know about MR Drywall's corporate status – are not supported by the record.

**12. The Magistrate Judge Ignored Case Law Holding that the Court Should Dismiss the ERISA Claims and Deny Plaintiffs' Request for Attorneys' Fees and Costs**

The confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court. *Ottley v. Schwartzberg*, 819 F.2d 373 (2d Cir. 1987). The grounds available to oppose the proceeding are very limited and the FAA is designed to achieve a prompt result. *Id.* For these reasons, the ERISA claims should not have been joined in the confirmation action, and the improper joinder justifies dismissal of the ERISA claims. *Ottley v. Schwartzberg*, 819 F.2d 373 (2d Cir. 1987) ("[a]ctions to confirm arbitration awards . . . are straightforward proceedings in which no other claims are to be adjudicated"). The Magistrate Judge erred in not addressing this issue.

Further, given that the ERISA claim has delayed the resolution of the confirmation action, the Magistrate Judge should have denied any request by plaintiffs to obtain attorneys' fees and costs on the confirmation award.

24

In addition, the request for attorneys' fees is based on the Collection Policy. As explained above, neither MR Drywall nor Mr. Rodrigue were informed of those terms of that policy or agreed upon them. In fact, the request for attorneys' fees is a material term that cannot just be unilaterally imposed against a party.

Moreover, contrary to the Magistrate Judge's findings, Defendant(s) had a colorable argument for not complying with the award. MR Drywall went out of business (Quinn Dec., Ex. C, at 73) and the award was not against any of the other defendants. In fact, as explained above, Mr. Rodrigue should not be required to pay hundreds of thousands of dollars in personal liability, without being afforded any ability to challenge the merits (either in arbitration or in this proceeding), where the arbitration preceding was not commenced against him and the Plaintiffs did not explain that they intended to hold him personally liable for any award rendered by the arbitrator, especially as the notice references that Plaintiffs would seek to hold only the "Company" liable for any default.

### CONCLUSION

Accordingly, Defendant(s) request that the Court deny the Report and Recommendations and deny Plaintiffs' motion, together with such other and further relief as may be just and proper.

Dated: February 8, 2017
Albany, New York

**TABNER, RYAN & KENIRY, LLP**

/s/William F. Ryan, Jr.
William F. Ryan, Jr., Esq.
*Attorneys for Defendants Claude Rodrigue and
    CR Drywall Residential, Inc.*
Tabner, Ryan & Keniry, LLP
18 Corporate Woods Boulevard, Suite 8
Albany, New York 12211
Telephone: (518) 512-5312
Facsimile: (518) 465-5112
wfr@trklaw.com
Bar Roll No.: WR7051

25