UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------X
TRUSTEES OF EMPIRE STATE CARPENTERS
ANNUITY, APPRENTICESHIP, LABOR-MANAGEMENT
COOPERATION, PENSION AND WELFARE FUNDS,

                        Plaintiff,

                                        MEMORANDUM & ORDER
        -against-                       13-CV-5760(JS)(SIL)

CLAUDE RODRIGUE doing business as
Mr Drywall, Inc., C.R. DRYWALL CO.,
INC., C.R. DRYWALL RESIDENTIAL, INC.,
and MR DRYWALL, INC.,

                        Defendants.
---------------------------------------X
APPEARANCES
For Plaintiff:      Charles R. Virginia, Esq.
                    Richard B. Epstein, Esq.
                    Elina Burke, Esq.
                    Todd Dickerson, Esq.
                    Virginia & Ambinder LLP
                    40 Broad Street, 7th Floor
                    New York, NY 10004

For Defendants:
Claude Rodrigue,    William F. Ryan, Jr., Esq.
C.R. Drywall        Tabner, Ryan, and Keniry, LLP
Residential,        18 Corporate Woods Blvd., Suite 8
Mr Drywall          Albany, NY 12211

C.R. Drywall Co.    David Brickman, Esq.
                    David Brickman PC
                    1664 Western Avenue
                    Albany, NY 12203


SEYBERT, District Judge:

        Currently pending before the Court is Magistrate Judge

Steven I. Locke's Report and Recommendation dated January 25, 2017

(the "R&R") with respect to plaintiffs Trustees of Empire State

Carpenters Annuity, Apprenticeship, Labor-Management Cooperation,

Pension and Welfare Funds' ("Plaintiffs" or the "Funds") motion for partial summary judgment, which requests confirmation of the subject arbitration award and an award of summary judgment against defendant Claude Rodrigue d/b/a Mr Drywall Inc. ("Rodrigue"). (Docket Entries 58 and 72.) Judge Locke recommends that Plaintiffs' motion be granted. (R&R, Docket Entry 72.) Defendants Rodrigue, C.R. Drywall Residential, Inc., and Mr Drywall, Inc. (collectively, "Defendants")[1] have filed objections that are also pending before the Court. (Defs.' Obj., Docket Entry 73.) For the reasons set forth below, Defendants' Objections are OVERRULED and the R&R is ADOPTED in its entirety.

BACKGROUND

The Court assumes familiarity with the factual background of this matter, which is set forth in detail in the R&R. Briefly, the Funds are employer and employee trustees of multiemployer labor-management trust funds and a labor management cooperation committee. (Compl. ¶ 5.) The Funds allege that Rodrigue was the owner and operator of Mr Drywall, Inc., an unincorporated entity. (Compl. ¶ 6.)

On June 27, 2002, Mr Drywall, Inc. executed a Memorandum of Understanding with respect to a collective bargaining agreement

---

[1] The remaining defendant in this action, C.R. Drywall Co. Inc., is represented by separate counsel and has not objected to the R&R.

with the Northeast Regional Council of Carpenters f/k/a Empire State Regional Council of Carpenters (the "Union") for the period from June 1, 2002 through May 31, 2006. (Craven Decl., Docket Entry 60, ¶¶ 1, 5; Craven Decl. Ex. C, Docket Entry 60-3.) On May 31, 2006, Rodrigue, as authorized representative of M.R. Drywall Distributors, Inc.,[2] executed a Memorandum of Agreement between Eastern Contractors Association, Inc. and the Union providing that the Master Agreement for the period from June 1, 2002 through May 31, 2006, shall remain in full force and effect from June 1, 2006, through May 31, 2011 (the "2006 Memorandum of Agreement"). (2006 Mem. of Agmt., Craven Decl. Ex. D, Docket Entry 60-4.) The collective bargaining agreement governing the period from June 1, 2006 through May 31, 2011 (the "CBA") requires that employers make specified contributions to the Funds and "'comply with the agreements, declarations of trust, plans and/or rules, policies and regulations of the applicable Funds so designated[.]'" (Craven Decl. ¶ 9 (quoting CBA, Craven Decl. Ex. E, Docket Entry 60-5, at 11).)

The Funds established a Joint Policy for Collection of Delinquent Contributions (the "Collection Policy") that requires employers to provide their books and payroll records to enable the

---

[2] For ease of reference, the Court will refer to Mr Drywall, M.R. Drywall, Inc., and M.R. Drywall Distributors, Inc., collectively, as "MR Drywall."

Funds to conduct an audit. (Collection Policy, Craven Suppl. Decl. Ex. A, Docket Entry 70-1, at 5-6.)[3] In the event an employer fails to contribute to the Funds, the matter is referred to arbitration. (Craven Decl. ¶ 12.)

The Funds allege that they conducted an audit of MR Drywall's books and records for January 1, 2008, through June 30, 2011 (the "Audit"), and discovered that MR Drywall failed to remit contributions in the principal amount of $438,717.24. (Craven Decl. ¶¶ 13-14.) The Funds allege that they initiated arbitration and a representative of MR Drywall failed to appear at the hearing. (Craven Decl. ¶ 16.) The Arbitrator ultimately determined that MR Drywall violated the CBA and awarded $641,009.32 to the Funds (the "Arbitration Award"). (Craven Decl. ¶ 17; see also Arb. Award, Craven Decl. Ex. H, Docket Entry 60-8.)

On October 21, 2013, the Funds commenced this action to confirm and enforce the Arbitration Award pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), Section 301 of the Labor Management Relations Act of 1947 ("LMRA"), and Section 9 of the Federal Arbitration Act ("FAA"). (See generally Compl.)

---

[3] The Funds have submitted two substantially similar collection policies executed in 2012 and 2013, respectively. (See Craven Decl. Ex. F, Docket Entry 60-6; Craven Suppl. Decl. Ex. A, Docket Entry 70-1.) The Court will refer to the Collection Policy dated March 6, 2012, (Collection Policy, Craven Suppl. Decl. Ex. A), as it predates the subject arbitration.

I.   <u>Plaintiffs' Motion for Partial Summary Judgment</u>

On August 25, 2016, Plaintiffs filed their motion for partial summary judgment seeking confirmation of the Arbitration Award and summary judgment against Rodrigue. (Pls.' Mot., Docket Entry 58.)  Plaintiffs argued that the arbitrator acted within the scope of his authority and the Arbitration Award was consistent with the CBA and Collection Policy. (Pls.' Br., Docket Entry 63, at 6.)  Plaintiffs also argued that Rodrigue failed to raise any genuine issues of material fact with respect to his personal liability for any judgment issued against MR Drywall. (Pls.' Br. at 7.)  Finally, Plaintiffs argued that they are entitled to attorneys' fees and costs. (Pls.' Br. at 9-12.)

In opposition, Defendants argued that issues of fact preclude the confirmation of the Arbitration Award and alleged, <u>inter</u> <u>alia</u>, that: (1) Plaintiffs have not established that the Collection Policy was binding on MR Drywall and Rodrigue, as (a) the Collection Policy does not contain an agreement to arbitrate or authorize the arbitrator to enter a default award, (b) MR Drywall's failure to appear at the arbitration constituted a "clear objection," and (c) the Collection Policy is inconsistent with the CBA; (2) the CBA is unsigned, and the provision allegedly binding MR Drywall to the Funds' agreements and policies does not define the terms "agreements" or "policies" or state that the provision is to be applied prospectively, and (3) there is no

arbitration, choice of forum or attorneys' fees provision in the CBA. (Defs.' Br., Docket Entry 65, at 3-5.) Additionally, Defendants argued that Plaintiffs did not demonstrate the reliability of the Audit and the arbitration failed to name Rodrigue as a party and was conducted by an arbitrator selected by the Funds at a location outside of Defendants' county of residence. (Defs.' Br. at 8-9.) Defendants also contended that Rodrigue should not be held personally liable for the Arbitration Award, as: (1) he was not served with notice of arbitration, (2) MR Drywall is a de facto corporation, and (3) Plaintiffs are estopped from asserting claims against Rodrigue based on their failure to name him as a party to the arbitration and treatment of MR Drywall as a "legally independent entity" in connection with the arbitration. (Defs.' Br. at 10-13.) Finally, Rodrigue argued that Plaintiffs' ERISA claim should be dismissed, and Plaintiffs' request for attorneys' fees should be denied. (Defs.' Br. at 14.)

II. The R&R

On January 25, 2017, Judge Locke issued his R&R. Judge Locke recommended that the Court confirm the Arbitration Award, and concluded that the arbitrator reasonably relied on the Audit in rendering his award, and pursuant to the Collection Policy, the Funds were entitled to interest, liquidated damages, attorneys' fees, audit costs, and the arbitrator's fee. (R&R at 7-9.) Judge Locke also found that MR Drywall waived its right to challenge the

arbitration proceeding and/or Audit by failing to attend the arbitration. (R&R at 9.)

Judge Locke similarly rejected Defendants' argument that the arbitrator lacked jurisdiction over MR Drywall. (R&R at 11.) Judge Locke found that MR Drywall was bound by the Collection Policy through the CBA, which incorporated the Collection Policy as the CBA's terms "anticipate the Funds' subsequent imposition of a collection policy through the Union's relationship with various employer associations." (R&R at 13.) Judge Locke also noted that: (1) Rodrigue testified at his deposition that his businesses were union employers, he was aware that MR Drywall was required to remit fringe benefit contributions to the Funds, and he signed the CBA for MR Drywall, and (2) documentary evidence indicated that MR Drywall had previously made benefit contributions and submitted to the Audit. (R&R at 13-15.) Additionally, Judge Locke found that the 2006 Memorandum of Agreement and the CBA "extended past their expiration dates unless and until an employer issues an explicit notice of withdrawal or a demand of some other modification." (R&R at 14-15.) Further, Judge Locke found that pursuant to the CBA, Rodrigue "explictly agreed to be represented by various employer associations" and "to be bound by their agreements with the Union," and "authorized representatives from both the Union and the [employer] associations signed the Collection Policy." (R&R at 14.)

Judge Locke declined to credit Defendants' contention that the arbitrator exceeded his authority by conducting the arbitration hearing in MR Drywall's absence and determined that this failure to appear did not constitute the requisite "forceful objection." (R&R at 16-17 (internal quotation marks and citation omitted).) Judge Locke also found that Plaintiffs properly served notice of arbitration, and the arbitrator considered the issues of notice and Defendants' absence in deciding to proceed with the arbitration. (R&R at 17-19.)

Judge Locke also recommended that Rodrigue be held personally liable for the Arbitration Award. (R&R at 19-24.) Judge Locke noted that there were no issues of fact as to Rodrigue's status as the sole proprietor of MR Drywall in light of his testimony that he was the sole owner, shareholder, officer, and director of MR Drywall, he was responsible for MR Drywall's "labor relations," and he signed the CBA. (R&R at 20.) Judge Locke also determined that Defendants failed to establish that MR Drywall should be treated as a de facto corporation based on the absence of evidence "suggesting that Rodrigue ever attempted to achieve legal corporate status for MR Drywall." (R&R at 21.) Additionally, Judge Locke rejected Defendants' argument that the Funds were constrained from attacking MR Drywall's corporate status because they previously sued MR Drywall as a corporation, and concluded that "MR Drywall's de facto corporate status is not

8

a factual assertion subject to the doctrine of admission. . . [r]ather it is a statement of law." (R&R at 22.) Judge Locke also rejected Defendants' affirmative defenses of estoppel, laches, and waiver. (R&R at 23-24.)

Finally, Judge Locke recommended that Plaintiffs be granted leave to file a motion for attorneys' fees and costs. (R&R at 24.) Judge Locke found that the terms of the Collection Policy as well as MR Drywall's refusal to comply with the Arbitration Award provide a basis for an award of fees. (R&R at 24-26.)

III. Defendants' Objections

On February 8, 2017, Defendants filed Objections to the R&R. (See, Defs.' Obj.) Defendants argue that Judge Locke erred in recommending that the Arbitration Award be confirmed because there are issues of fact as to whether they "consented to arbitration and/or agreed to be bound by the subject arbitration provision." (Defs.' Obj. at 7.) Particularly, Defendants allege that: (1) there are issues of fact as to "what the parties agreed upon regarding the terms of the CBA," (2) there is no evidence that Defendants signed the Collection Policy, or that the Collection Policy was in existence during the relevant time period, (3) Judge Locke's conclusion that the Collection Policy applied retroactively and the CBA extended into 2012 constitutes speculation, and (4) the Collection Policy is inconsistent with the CBA because the CBA does not contain any arbitration, choice

of forum, or attorneys' fees provisions. (Defs.' Obj. at 7-10, 14-17.)

Similarly, Defendants argue that Judge Locke's interpretation of the Collection Policy rendered it illusory and unenforceable insofar as he "erroneously assumed that Plaintiffs had the unrestrained discretion to create any Collection Policy they desired, regardless of whether or not the terms changed the CBA" and failed to consider the lack of any evidence demonstrating that Defendants had notice of the arbitration provision. (Defs.' Obj. at 10-12.) Defendants also argue that Judge Locke "speculated that Defendant(s) consented to the arbitration clause by making benefit contributions and submitting to the audit" notwithstanding the absence of any evidence that Defendants made contributions to the Funds after the CBA expired in 2011. (Defs.' Obj. at 14-17.)

Additionally, Defendants aver that the arbitrator was not authorized to conduct the arbitration in Defendants' absence, and Defendants' failure to appear constituted an objection, (Defs.' Obj. at 12-13), and the Audit and arbitration proceeding were deficient, (Defs.' Obj. at 17-19).

Defendants also argue that Judge Locke erred in recommending that Rodrigue be held personally liable for the Arbitration Award because: (1) Rodrigue was deprived of due process based on Plaintiffs' failure to serve him with notice of the arbitration, (Defs.' Obj. at 5-7); (2) MR Drywall was a de facto

10

corporation, (Defs.' Obj. at 19-22); (3) Plaintiffs have made judicial admissions that MR Drywall was a corporation in this matter and prior proceedings, (Defs.' Obj. at 19-22); and (4) Defendants are not precluded from asserting the defenses of estoppel, laches, and waiver, (Defs.' Obj. at 23-24).

Defendants allege that Judge Locke erred by failing to address the impropriety of Plaintiffs' ERISA claim and by determining that Plaintiffs were entitled to request counsel fees and costs. (Defs.' Obj. at 24-25.) Finally, Defendants argue that Judge Locke erred to the extent he made findings and recommendations against defendants C.R. Drywall Co., Inc. and C.R. Drywall Residential, Inc., as Plaintiffs' motion did not address their claims against these defendants. (Defs.' Obj. at 4-5.)

On February 21, 2017, Plaintiffs filed a response arguing that the Court should adopt Judge Locke's well-reasoned R&R. (See generally Pls.' Resp., Docket Entry 74.)

## DISCUSSION

"When evaluating the report and recommendation of a magistrate judge, the district court may adopt those portions of the report to which no objections have been made and which are not facially erroneous." Walker v. Vaughan, 216 F. Supp. 2d 290, 291 (S.D.N.Y. 2002). A party may serve and file specific, written objections to a magistrate judge's report and recommendation within fourteen days of being served with the recommended

11

disposition. See FED. R. CIV. P. 72(b)(2). Upon receiving any timely objections to the magistrate judge's recommendation, the district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); see also FED. R. CIV. P. 72(b)(3). A party that objects to a report and recommendation must point out the specific portions of the report and recommendation to which they are objecting. See Barratt v. Joie, No. 96-CV-0324, 2002 WL 335014, at *1 (S.D.N.Y. Mar. 4, 2002).

When a party raises an objection to a magistrate judge's report, the Court must conduct a de novo review of any contested sections of the report. See Pizarro v. Bartlett, 776 F. Supp. 815, 817 (S.D.N.Y. 1991). However, where a party "makes only conclusory or general objections, or simply reiterates his original arguments, the Court reviews the Report and Recommendation only for clear error." Walker, 216 F. Supp. 2d at 291 (internal quotation marks and citation omitted).

Preliminarily, the Court notes that much of Defendants' Objections is a reiteration of their underlying opposition. Defendants' arguments that (1) the arbitrator was not authorized to conduct the arbitration in Defendants' absence and Defendants' non-appearance constituted an objection, and (2) the underlying audit and arbitration were deficient, are largely verbatim recitations of their underlying opposition brief. (Compare Defs.'

Obj. at 12-13 with Defs.' Br. at 3-4 and Defs.' Obj. at 17-19 with Defs.' Br. at 7-9.) Similarly, Defendants' argument that Rodrigue should not be held personally liable for the Arbitration Award based on due process violations in connection with Plaintiffs' failure to serve Rodrigue with notice of arbitration, as well as their argument that the defenses of estoppel, laches, and waiver are applicable, also constitute reiterations of their underlying arguments. (Compare Defs.' Obj. at 5-7 with Defs.' Br. at 10; and Defs.' Obj. at 23-24 with Defs.' Br. at 13-14.) The Court has reviewed the portions of the R&R addressing these arguments for clear error and finds none.

To the extent Defendants argue--without citation to any legal authority--that this matter differs from the cases cited by Judge Locke regarding notice because "[u]nlike in the cases relied upon by the Magistrate Judge, the notice [of arbitration] was not even addressed to Mr. Rodrigue," the Court finds that this factual distinction does not render the case law set forth in the R&R inapplicable. (See Defs.' Obj. at 6; R&R at 17-19.) As noted by Judge Locke, notice of arbitration "need only be 'reasonably calculated to inform [the party] of the proceeding and provide[ ] [the party] an opportunity to be heard," and the record establishes that Plaintiffs mailed a Notice of Intent to Arbitrate to MR Drywall's address, 11 Drywall Lane, Voorheesville, New York, and a return receipt was signed "Rodrigue." (R&R at 18-19 (citing

_Yukos Capital S.A.R.L. v. Samaraneflegaz_, 963 F. Supp. 2d 289, 297
(S.D.N.Y. 2013), _aff'd_, 592 F. App'x 8 (2d Cir. 2014) (internal
quotation marks and citation omitted; alteration in original));
Craven Supp. Decl., Docket Entry 70, ¶¶ 6-7, Ex. B; Rodrigue's
Dep. Tr., Dickerson Decl. Ex. D, Docket Entry 61-4, at 23:3-9.)
Rodrigue testified that 11 Drywall Lane had always been MR
Drywall's address, and at the time of his deposition, he had owned
the building at 11 Drywall Lane for twenty years. (Rodrigue's
Dep. Tr. at 23:7-9; 26:8-12.) Notably, a close reading of
Defendants' submissions reveals that Rodrigue does not allege that
he did not receive notice of the arbitration. (See _generally_
Defs.' Obj.; Rodrigue's Aff., Docket Entry 65-1; Rodrigue's Suppl.
Aff., Docket Entry 65-2.)

The Court will conduct a _de novo_ review of Defendants'
remaining objections.

## I.    Objections Regarding the Confirmation of the Award

"[C]onfirmation of an arbitration award is a summary
proceeding that merely makes what is already a final arbitration
award a judgment of the court, and the court must grant the award
unless the award is vacated, modified, or corrected." _D.H. Blair_
_& Co., Inc. v. Gottdiener_, 462 F.3d 95, 110 (2d Cir. 2006)
(internal quotation marks and citation omitted). Confirmation of
an award requires "[o]nly a barely colorable justification," and
the Court must confirm the arbitration award where "there is no

14

indication that the arbitration decision was made arbitrarily, exceeded the arbitrator's jurisdiction, or otherwise was contrary to law." Trustees of Empire State Carpenters Annuity v. P&B Specialties Inc., No. 15-CV-2053, 2015 WL 9943252, at *4, report and recommendation adopted, 2016 WL 373966 (E.D.N.Y. Dec. 15, 2015) (internal quotation marks and citation omitted).

As previously noted, Defendants argue that Judge Locke erred in concluding that the parties agreed to arbitrate their dispute because: (1) there are issues of fact as to whether the parties agreed on the terms of the CBA, (2) there are issues of fact as to whether Defendants consented to arbitration, (3) the Collection Policy is inconsistent with the CBA, and (4) Judge Locke erroneously assumed that Plaintiffs could unilaterally create a Collection Policy and failed to consider the absence of any evidence that Defendants had notice of the arbitration provision set forth in the Collection Policy. (See generally Defs.' Obj. at 7-17.) The Court finds these objections to be without merit.

First, the Court concurs with Judge Locke that MR Drywall was bound by the CBA. Defendants allege that Plaintiffs have relied on an unsigned copy of the CBA and have not proffered the "unidentified 'proof'" relied upon by the arbitrator in determining that MR Drywall was a signatory to the CBA. (Defs.' Obj. at 14-15.) However, as set forth more fully in the R&R, (see R&R at 14-15), MR Drywall executed Memoranda regarding collective

15

bargaining agreements with the Union applicable to the time periods of June 1, 1999 through May 31, 2002, and June 1, 2002, through May 31, 2006. (Craven Decl. Exs. B and C.) On May 31, 2006, MR Drywall executed the 2006 Memorandum of Agreement, which states that "[a]ll terms and conditions of the Region 3 Master Agreement, June 1, 2002-May 31, 2006 not modified below shall remain in full force and effect." (2006 Mem. of Agmt., Craven Decl. Ex. D, Docket Entry 60-4.) Plaintiffs have submitted an unsigned copy of the CBA, which governs the period from June 1, 2006 through May 31, 2011.

The fact that Plaintiffs rely upon an unsigned copy of the CBA is of no moment given MR Drywall's execution of successive Memoranda with respect to prior collective bargaining agreements, as well as the 2006 Memorandum of Agreement with respect to the CBA. Moreover, Rodrigue testified that he signed the CBA. (Rodrigue's Dep. Tr. 70:3-14 and Ex. 3, at 75 (testifying that he saw the CBA "once, I think, when I signed it for M.R. Drywall").) To the extent Defendants appear to argue that the 2006 Memorandum of Agreement constitutes an "overlapping" collective bargaining agreement, (see Defs.' Obj. at 16), it is clear that this Memorandum outlined the amendments to the prior collective bargaining agreement to be incorporated into the CBA for 2006 through 2011.

Further, as noted by Judge Locke, the CBA provides that

16

it shall remain in effect until May 31, 2011, and "shall continue thereafter from year to year unless either party notifies the other party in writing . . . that either party desires to modify this Agreement." (R&R at 15; CBA, Article 41, at 18.) Defendants have failed to proffer any evidence that MR Drywall, the Union, or the signatory employer association, sought to modify the CBA. In the absence of any such evidence, it is not "speculat[ive]" to conclude that "the CBA was in force and in place during the relevant time period at issue during the arbitration[.]" (Defs.' Obj. at 8-9; R&R at 15.)

Defendants' argument that Rodrigue's "generalized" deposition testimony does not establish that he agreed to the CBA is similarly unpersuasive. (Defs.' Obj. at 15-16.) Defendants' assertion that Plaintiffs' counsel "outlandish[ly]" asked Rodrigue quick questions to prevent him from reviewing the CBA is not supported by a review of the deposition transcript. (Defs.' Obj. at 15-16.) During Rodrigue's deposition, Plaintiffs' counsel asked if Rodrigue "had a chance to review Plaintiffs' Exhibit 3 [the CBA]." (Rodrigue's Dep. Tr. 70:3-4.) When Rodrigue responded no, Plaintiffs' counsel asked if Rodrigue just "review[ed] this document." (Rodrigue's Dep. Tr. 70:5-6.) Such an exchange hardly constitutes rapid fire questioning designed to disrupt Rodrigue's review of the document.

Moreover, while the Court acknowledges that counsel

disputed whether the CBA had been produced in discovery prior to Rodrigue's deposition, before he was presented with the CBA, Rodrigue testified that he signed "union contracts" on behalf of MR Drywall with a carpenter's union. (Rodrigue's Dep. Tr. 66:17-21; 67:23-68:2.) Additionally, with respect to the CBA, Rodrigue testified as follows:

> Q. Do you recognize this document?
> A. I saw it once, I think, when I signed it for M.R. Drywall; I never saw it again.
> Q. Did you ever try to terminate this agreement?
> A. Not that I know of . . .
> Q. Why did M.R. Drywall sign with the union?
> A. To perform union work.

(Rodrigue's Dep. Tr. 70:12-71:3.) Rodrigue also testified that MR Drywall was required to remit fringe benefit contributions "[b]ased on the contract." (Rodrigue's Dep. Tr. 74:13-18.) Rodrigue's use of equivocal language and allegation that he did not read the CBA, (see, e.g. Rodrigue's Dep. Tr. 74:19-21), do not alter his testimony that he signed the CBA and MR Drywall was responsible for fringe contributions.

Second, as the CBA was in full force and effect at all relevant times, Defendants' argument that Judge Locke erred in concluding that the parties agreed to arbitration is without merit. (Defs.' Obj. at 7-10.) The CBA provides, with respect to fringe benefits, that "[t]he employer shall be bound by and shall comply with the agreements, declarations of trust, plans and/or rules,

policies and regulations of the applicable Funds so designated,
provided in each such case that such agreements, declarations of
trust, plans and/or rules, policies and regulations are not in
conflict or inconsistent with any provisions of th[e] [CBA]."
(CBA, Article 17, § 3, at 11.) As previously noted, the Collection
Policy sets forth an arbitration procedure in connection with the
collection of delinquent employer contributions. (Collection
Policy at 3-4.) Thus, as the CBA provides that employers are bound
by the Funds' policies, MR Drywall is bound by the Collection
Policy and Defendants' allegations that they did not sign or agree
to the Collection Policy and were not notified of the terms of the
Collection Policy are of no import. (See Defs.' Obj. at 7-8.)
Cf. Trustees of the Empire State Carpenters Annuity v. Bayview
Custom Constr. Corp., No. 15-CV-6574, 2016 WL 6892147, at *3
(E.D.N.Y. Nov. 22, 2016) (confirming the arbitration award where
"[t]he arbitrator's award followed the terms of the CBA and
Collection Policy to the letter"); P&B Specialties, Inc., 2015 WL
9943252, at *4 (recommending that the arbitrator's order be
confirmed where it "dr[ew] its essence from the [collective
bargaining agreement] and the Collection Policy, which allows for
the performance of an audit at the Funds' request"). The Court
also finds that the CBA's failure to define the terms "agreements"
or "policies" is not probative as to the applicability of the
Collection Policy. (See Defs.' Obj. at 10.)

Further, the Court disagrees with Defendants' contention that Judge Locke "merely speculated that the March 2012 Collection Policy applied retroactively to the parties' dispute which arose prior to this time." (Defs.' Obj. at 8.) As set forth above, the CBA states that it continues from year to year absent written notification of a desire to modify the CBA, and Defendants failed to proffer evidence of any written request to modify the CBA. (CBA at 18.) It follows that the CBA remained in effect through 2012 and MR Drywall continued to be bound by the Funds' agreements and policies, particularly the Collection Policy. (See CBA at 11.) The parties' dispute arose in connection with the Audit and while the record does not indicate the date that Plaintiffs commenced the Audit, Plaintiffs provided MR Drywall with the revised Audit results on or about November 9, 2012. (Audit Results, Dickerson Decl. Ex. D, Docket Entry 61-4, at 123-32.) Thus, the Collection Policy was not applied retroactively.

As noted by Judge Locke, MR Drywall's prior conduct in making benefit contributions provides additional support for the applicability of the Collection Policy. (R&R at 15.) While Defendants note that "there is no evidence that Defendant(s) made any such contributions after the CBA expired in 2011[,]" (Defs.' Obj. at 16-17), Plaintiffs proffered a sampling of remittance reports detailing MR Drywall's contributions during 2009-2011, (Tompuri Aff. Ex. A, Docket Entry 62-1), and MR Drywall submitted

to the Funds' Audit of their payroll records for the period of January 1, 2008 through June 30, 2011, sometime prior to November 9, 2012, (see Audit Results). Cf. Trustees of Sheet Metal Workers Int'l Ass'n Local No. 38 Vacation Fund v. Katonah Roofing, Inc., Nos. 10-CV-1619, 11-CV-8185 2011 WL 9010113, at *4 (S.D.N.Y. Sept. 4, 2011) ("courts in this Circuit, have held the following behaviors established the defendant employer adopted the unsigned CBA[:] signing a previous CBA; submission of remittance reports in accordance with the terms of the CBAs over several years; submission to audits by the funds; and payment of union wages").

Third, the Court rejects Defendants' argument that Judge Locke "effectively determined" that Plaintiffs were authorized to unilaterally create the arbitration provision, and interpreted the Collection Policy in a manner that would render it "illusory and unenforceable." (Defs.' Obj. at 10-11.) As noted by Judge Locke, pursuant to the CBA, MR Drywall "agreed to be represented by various employer associations in [its] field of construction contracting and to be bound by their agreements with the Union." (R&R at 14 (citing CBA, Article 3, at 5).) The Collection Policy was executed by "authorized representatives (Trustees) from the Union and from employers covered by the collective bargaining agreements with the Union." (Craven Suppl. Decl. ¶ 5, at 10.) Judge Locke correctly found that "because authorized representatives from both the Union and the associations signed

the Collection Policy at issue, it is applicable, and MR Drywall is bound under its terms to submit to an arbitration regarding the disputed contribution payments."  (R&R at 14.)

Thus, Judge Locke did not determine that Plaintiffs "had the unrestrained discretion to create any Collection Policy they desired," and the record does not support Defendants' position that Plaintiffs "unilaterally included the arbitration provision in the Collection Policy and, in effect, changed the terms of the alleged CBA without the Defendants' consent."  (Defs.' Obj. at 11.)  Furthermore, contrary to Defendants' contention, the employer trustee was authorized to bind MR Drywall in light of the CBA's previously noted provision with respect to employer association representation of the employers bound by the CBA.  (See Defs.' Obj. at 12; CBA, Article 3, § 3 at 6 ("[t]he Associations shall be one bargaining unit for all Employers bound by this Agreement").)

Finally, the Court declines to credit Defendants' unsupported argument that the absence of any provision regarding arbitration, choice of forum, or attorneys' fees in the CBA somehow renders the Collection Policy "inconsistent or in conflict" with the CBA.  (Defs.' Obj. at 14.)  The CBA essentially incorporated the Collection Policy by providing that the Funds' policies and regulations are binding on employers, (see R&R at 13), and the inclusion of the arbitration provision in the Collection Policy

did not conflict with the terms of the CBA.

Accordingly, Defendants' objections regarding Judge Locke's recommendation that the Arbitration Award be confirmed are OVERRULED.

## II.  Objections Regarding Rodrigue's Personal Liability

As previously noted, Defendants argue that Judge Locke erred in concluding that MR Drywall was not a de facto corporation. Particularly, Defendants allege that Judge Locke (1) applied this doctrine too narrowly by relying on the alleged absence of any evidence that Rodrigue attempted to reactivate MR Drywall's corporate status, and (2) incorrectly concluded that Plaintiffs' treatment of MR Drywall as a corporation in this action and prior lawsuits did not constitute informal judicial admissions. (Defs.' Obj. at 19-23.)  The Court disagrees.

"'Under very limited circumstances, courts may invoke the de facto corporation doctrine where there exists (1) a law under which the corporation might be organized, (2) an attempt to organize the corporation and (3) an exercise of corporate powers thereafter.'"  Hwang v. Grace Road Church (in New York), No. 14-CV-7187, 2016 WL 1060247, at *8 (E.D.N.Y. Mar. 14, 2016) (quoting In re Hausman, 13 N.Y.3d 408, 412, 921 N.E.2d 191, 193, 893 N.Y.S.2d 499 (N.Y. 2009)).  The second prong of this inquiry has been narrowly construed and the alleged corporation must make a "colorable attempt to comply with the statutes governing

incorporation prior to the exercise of corporate powers." Id. (internal quotation marks and citation omitted). See also Gelfman Int'l Enters. v. Miami Sun Int'l Corp., No. 05-CV-3826, 2009 WL 2242331, at *6 (E.D.N.Y. Jul. 27, 2009) ("New York courts recognize a business as a de facto corporation in cases where the business inadvertently failed to meet the requirements of the law or was operating with the formalities of a corporation and was attempting to achieve legal status"). But see J&J Sports Prods., Inc. v. Tellez, No. 11-CV-2823, 2011 WL 6371521, at *2 (E.D.N.Y. Dec. 20, 2011) (holding that the entity was a de facto corporation where it "continued to function as a bar and represented itself as a corporation to the New York State Liquor Authority . . . ").

Judge Locke properly concluded that there is no basis to treat MR Drywall as a de facto corporation in the absence of any evidence of an attempt to organize the entity as a corporation. (R&R at 21-23.) Defendants do not dispute Judge Locke's finding that the only iteration of MR Drywall to be formally incorporated was M.R. Drywall Distributors, Inc., which was dissolved by proclamation in 1997. (R&R at 21; see also Dickerson Decl., Docket Entry 61, ¶¶ 2-3; Ex. A, Docket Entry 61-1.) The record is bereft of any evidence that any of the MR Drywall entities made the slightest attempt to incorporate after M.R. Drywall Distributors, Inc.'s dissolution. In the absence of any allegations regarding attempts to incorporate, the Court also concludes that MR Drywall

was not a de facto corporation. See Gelfman, 2009 WL 2242331, at *1, 6 (holding that the plaintiff, which forfeited its corporate charter for failure to file a property return, was not a de facto corporation where, inter alia, "there [wa]s no evidence that it made efforts to remedy defects of incorporation in Maryland").

Defendants' reliance on L-Tec Elecs. Corp. v. Cougar Elec. Org., Inc., 198 F.3d 85, 87 (2d Cir. 1999), is misplaced. (See Defs.' Obj. at 20, 22.) In L-Tec, the plaintiff alleged that the defendant-entity failed to pay for electronics. L-Tec, 198 F.3d at 86. Certain deliveries were made while the defendant-entity was temporarily dissolved for failure to pay franchise taxes; however, the entity was reinstated less than three years after its dissolution. Id. at 86. While the Second Circuit affirmed the district court's determination that "reincorporation relieved the individual defendants of any personal liability on the purchases from [the plaintiff]," id. at 87, again, as set forth above, in the instant action, there is no evidence that M.R. Drywall Distributors, Inc., was reinstated.

Defendants also argue that "unlike the cases relied upon by the Magistrate Judge, Plaintiffs explicitly commenced arbitration against the subject entity and now seek to obtain a judgment in this proceeding based on those proceedings." (Defs.' Obj. at 22.) However, the fact that Plaintiffs commenced arbitration against "MR Drywall Inc." and seek to enforce the

25

resulting Arbitration Award against Rodrigue does not change the Court's analysis of whether MR Drywall is a <u>de facto</u> corporation. Moreover, contrary to Defendants' contention, Judge Locke's finding that Rodrigue engaged in "knowingly deceptive conduct" is supported by the record. (<u>See</u> Defs.' Obj. at 23 ("[t]he Magistrate Judge's findings--that Defendant(s) misle[d] Plaintiffs or that Plaintiffs did not know about MR Drywall's corporate status--are not supported by the record"); R&R at 23.)  Again, the only MR Drywall entity to be incorporated, MR Drywall Distributors, Inc., was dissolved in 1997, yet Rodrigue executed a Memorandum of Understanding as an officer of "M.R. Drywall Inc." on July 2, 1999, and signed the 2006 Memorandum of Agreement on behalf of "M.R. Drywall Distributors, Inc."  (<u>See</u> Dickerson Decl. Exs. A and B, Docket Entries 61-1 and 61-2; Craven Decl. Exs. B and D, Docket Entries 60-2 and 60-4.)

Additionally, Plaintiffs' prior lawsuit against "'MR Drywall Services, LLC', which according to [Plaintiffs] was a/k/a 'M.R. Drywall, Inc.,'" (<u>see</u> Quinn Aff., Docket Entry 65-3, ¶ 5), and commencement of this action against "MR Drywall Inc." do not constitute judicial admissions.  "An assertion of fact in a pleading is a judicial admission by which [a party] normally is bound throughout the course of the proceeding."  <u>Fiedler v. Incandela</u>, --- F. Supp. 3d ----, 2016 WL 7406442, at *7 (E.D.N.Y. 2016) (internal quotation marks and citation omitted; alteration

in original).  However, it is well settled that "judicial admissions on questions of law have <u>no</u> legal effect."  <u>Id.</u> (internal quotation marks and citation omitted; emphasis in original).  <u>See also</u> <u>Craft v. Covey</u>, No. 10-CV-0246, 2011 WL 923487, at *4 (D. Vt. Mar. 4, 2011) ("[i]t is well-established that judicial admissions are limited to statements of fact, and do not include an attorney's legal theories, arguments, or conclusions"); <u>Ancile Inv. Co. Ltd. v. Archer Daniels Midland Co.</u>, No. 08-CV-9492, 2011 WL 3516128, at *2 (S.D.N.Y. Aug. 3, 2011) ("the law is clear that judicial admissions are 'statements of fact rather than legal arguments made to a court'") (quoting <u>N.Y. State Nat'l Org. for Women v. Terry</u>, 159 F.3d 86, 97 n.7 (2d Cir. 1998)).  Accordingly, as noted by Judge Locke, whether MR Drywall is a <u>de</u> <u>facto</u> corporation is a question of law, not a statement of fact.  (R&R at 22.)  Thus, the commencement of this action and prior actions against "MR Drywall Inc." do not constitute judicial admissions regarding MR Drywall's corporate status.

Moreover, while the Second Circuit has not addressed whether judicial admissions may be binding in subsequent actions, "the general rule seems to be that a judicial admission only binds the party that makes it in the action in which it is made, not in separate and subsequent cases."  <u>Hausler v. JP Morgan Chase Bank, N.A.</u>, 127 F. Supp. 3d 17, 37 (S.D.N.Y. 2015) (internal quotation marks and citations omitted).  Thus, even if the Court were to

construe Plaintiffs' filing of a prior lawsuit against MR Drywall Inc. as a judicial admission regarding MR Drywall's corporate status, it would not be binding in this action and would only be considered as evidence. See id. Indeed, while Defendants cite to Matter of Union Indem. Ins. Co. of N.Y. v. Am. Centennial Ins. Co., 89 N.Y.2d 94, 674 N.E.2d 313, 651 N.Y.S.2d 383 (N.Y. 1996), that case expressly states that a formal judicial admissions in a prior action become informal judicial admissions in a subsequent action and are "not conclusive, though they are evidence of the fact or facts admitted." Id. at 103 (internal quotation marks and citation omitted).

In any event, the Court agrees with Judge Locke's conclusion that there are no issues of material fact as to Rodrigue's status as sole proprietor of MR Drywall, which renders him personally liable for MR Drywall's debts. (R&R at 19-20.) See Trustees of the Mason Tenders, Dist. Council Welfare Fund, Pension Fund, Annuity Fund and Training Program v. Faulkner, 484 F. Supp. 2d 254, 257 (S.D.N.Y. May 1, 2007) ("As a sole proprietorship, the defendant is personally liable for his business debts."). It is undisputed that MR Drywall was not incorporated during the relevant time period and, as noted by Judge Locke, Rodrigue testified, inter alia, that he was the sole owner, shareholder, officer, and director of MR Drywall, as well as the sole supervisor and manager. (R&R at 20.)

In a footnote, Defendants state that "in this action, the plaintiffs have alleged that 'Terry Bailey owns and manages MR Drywall'" and argue that this allegation is an "official judicial admission [that] creates additional confusion that precludes summary judgment." (Defs.' Obj. at 21, n.3.) However, this allegation does not constitute a judicial admission as it is not a factual assertion "concerning matters peculiarly within [Plaintiffs'] knowledge and control." Hausler, 127 F. Supp. 3d at 37 (internal quotation marks and citation omitted).

Moreover, the Court possesses "broad discretion to relieve the parties from the consequences of judicial admissions in the appropriate circumstances," such as where "accepting the admission would be manifestly unjust or if the evidence contrary to the stipulation is substantial." See TR 39th St. Land Corp. v. Salsa Distribution USA, LLC, No. 11-CV-7193, 2015 WL 1499173, at *5 (S.D.N.Y. Mar. 25, 2015) (internal quotation marks and citation omitted). At his deposition, Rodrigue testified as follows:

> Q. Who owns M.R. Drywall?
> A. Claude Rodrigue.
> Q. And that's you; is that correct?
> A. Yes.
> Q. Are there any other owners?
> A. No.
> Q. At any point, were there any other owners?
> A. No.

(Rodrigue's Dep. Tr. 11:12-20.) Rodrigue's interrogatory responses also confirm that he was the only current or former

owner, shareholder, officer, and director of MR Drywall. (Dickerson Decl. Ex. C, Docket Entry 61-3, at 1-2.) Thus, even if Plaintiffs' allegation regarding Terry Bailey--which appears in the Complaint, (Compl. ¶ 12)--constitutes a judicial admission, the Court exercises its discretion to relieve Plaintiffs from the consequences of that admission in light of the substantial evidence that Rodrigue was the sole owner of MR Drywall.

Accordingly, Defendants' objections regarding Judge Locke's recommendation that Rodrigue be held personally liable for the Arbitration Award are OVERRULED.

III. Objections Regarding CR Drywall

Defendants object to the R&R to the extent it made any findings or recommendations against C.R. Drywall Residential, Inc. and C.R. Drywall Co., Inc. (collectively, "CR Drywall"). (Defs.' Obj. at 4.) Defendants allege that in collectively referring to all defendants as "Defendant" or "Rodrigue," Judge Locke made vague and ambiguous findings even though Plaintiffs' motion did not seek any relief against CR Drywall. (Defs.' Obj. at 4-5.) Plaintiffs concede that summary judgment should not be entered against CR Drywall. (Pls.' Resp. at 23.)

It is undisputed that Plaintiffs did not move for summary judgment against CR Drywall. However, Judge Locke did not make any recommendations regarding Plaintiffs' claims against CR Drywall. As set forth above, Judge Locke recommended that the

Arbitration Award be confirmed, Rodrigue be held personally liable for MR Drywall's failure to comply with the Arbitration Award, and Plaintiffs be granted leave to move for attorneys' fees and costs. (R&R at 19, 24-25.)

The Court acknowledges that the R&R contains the following definition for "Defendant": "Defendant Claude Rodrigue doing business as MR Drywall Inc; C.R. Drywall Co., Inc; and C.R. Drywall Residential, Inc. ('Defendant' or 'Rodrigue')". (R&R at 1.) However, the Court finds that Judge Locke clearly indicated that his findings with respect to confirmation of the Arbitration Award and Rodrigue's personal liability were against MR Drywall and/or Rodrigue. Indeed, the sole reference to CR Drywall in the R&R is the previously noted definition. Accordingly, Defendants' objection is OVERRULED. However, in the interest of additional clarity, the Court reaffirms that Judge Locke's findings and recommendations set forth in the R&R are limited to MR Drywall and Rodrigue.

Additionally, Plaintiffs are directed to advise the Court whether they intend to proceed with their claims against CR Drywall within fourteen (14) days of the date of this Memorandum and Order.

IV. Objections Regarding Attorneys' Fees and Costs

Defendants argue that Judge Locke erred in recommending that Plaintiffs be granted leave to move for attorneys' fees and

costs. (Defs.' Obj. at 24-25.) Defendants aver that Plaintiffs'
request for attorneys' fees is derived from the Collection Policy
and as Rodrigue was not provided notice of the terms of the
Collection Policy and did not agree to those terms, "the request
for attorneys' fees is a material term that cannot just be
unilaterally imposed against a party." (Defs.' Obj. at 25.)
Alternatively, Defendants allege that they possessed a "colorable
argument" for failing to comply with the Arbitration Award, namely,
that MR Drywall went out of business and the Arbitration Award was
not against MR Drywall's co-defendants. (Defs.' Obj. at 25.)

        As set forth in great detail above, the Collection Policy
is binding on MR Drywall and expressly provides that the Funds are
entitled to attorneys' fees from delinquent employers in
connection with their collection efforts. (Collection Policy at
§§ 1.1(C)(4); 6.2.) Additionally, while attorneys' fees are
generally not recoverable in the absence of statutory authority,
"[i]n the context of confirmation proceedings . . . 'when a
challenger refuses to abide by an arbitrator's decision without
justification, attorney's fees and costs may properly be
awarded.'" Trustees of the N.Y. City Dist. Council of Carpenters
Pension Fund v. Coastal Envtl. Grp., Inc., No. 16-CV-6004, 2016 WL
7335672, at *3 (S.D.N.Y. Dec. 16, 2016) (quoting Int'l Chem.
Workers Union, Local No. 227 v. BASF Wyandotte Corp., 774 F.2d 43,
47 (2d Cir. 1985)). The Court concurs with Judge Locke that MR

Drywall's alleged "colorable basis" for failing to comply with the Arbitration Award--that MR Drywall "went out of business" and Plaintiffs did not commence the arbitration against Rodrigue--is unpersuasive and does not constitute a justification for noncompliance. (R&R at 25-26; Defs.' Obj. at 25.)

Defendants also argue that Plaintiffs' ERISA claim should not have been filed as part of this action and, thus, their request for attorneys' fees should be denied since "the ERISA claim has delayed the resolution of the confirmation action[.]" (Defs.' Obj. at 24.) However, as noted by Plaintiffs, this argument relates to the reasonableness of any claimed fees, not the basis for an award of attorneys' fees. (See Pls.' Resp. at 22-23.) Defendants will have the opportunity to posit their argument regarding Plaintiffs' ERISA claim in connection with Plaintiffs' motion for attorneys' fees and costs.

Accordingly, Defendants' Objections regarding Judge Locke's recommendation that Plaintiffs be granted leave to move for attorneys' fees are OVERRULED.

<u>CONCLUSION</u>

For the foregoing reasons, Judge Locke's R&R (Docket Entry 72) is ADOPTED in its entirety and Plaintiffs' motion for summary judgment (Docket Entry 58) is GRANTED. Plaintiffs are granted leave to file a motion for attorneys' fees and costs within sixty (60) days of the date of this Memorandum and Order.

Plaintiffs are further directed to advise the Court whether they intend to proceed with their claims against C.R. Drywall Co., Inc. and C.R. Drywall Residential, Inc., within fourteen (14) days of the date of this Memorandum and Order.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:      March __29__, 2017
            Central Islip, New York